# Tab 4

# Enrolled Bill No. 416

Dockets.Justia.com

Act No. 108
Public Acts of 2005
Approved by the Governor
September 14, 2005

Filed with the Secretary of State
September 14, 2005

EFFECTIVE DATE: December 1, 2005

## STATE OF MICHIGAN
## 93RD LEGISLATURE
## REGULAR SESSION OF 2005

Introduced by Senator Cropsey

# ENROLLED SENATE BILL No. 416

AN ACT to amend 1978 PA 33, entitled "An act to prohibit the dissemination, exhibiting, or displaying of certain sexually explicit matter to minors; to prohibit certain misrepresentations facilitating the dissemination of sexually explicit matter to minors; to provide penalties; to provide for declaratory judgments and injunctive relief in certain instances; to impose certain duties upon prosecuting attorneys and the circuit court; to preempt local units of government from proscribing certain conduct; and to repeal certain acts and parts of acts," by amending the title and sections 1, 2, and 4 (MCL 722.671, 722.672, and 722.674), section 1 as amended by 2003 PA 192, and by adding section 12a, part II, and a heading for part I.

*The People of the State of Michigan enact:*

### TITLE

An act to prohibit the dissemination, exhibiting, or displaying of certain sexually explicit matter and ultra-violent explicit video games to minors; to prohibit certain misrepresentations facilitating the dissemination of sexually explicit matter and ultra-violent explicit video games to minors; to provide penalties and sanctions; to provide for declaratory judgments and injunctive relief in certain instances; to impose certain duties upon prosecuting attorneys and the circuit court; to preempt local units of government from proscribing certain conduct; and to repeal acts and parts of acts.

### PART I

### SEXUALLY EXPLICIT MATTER

Sec. 1. As used in this part:

(a) "Display" means to put or set out to view or to make visible.

(b) "Disseminate" means to sell, lend, give, exhibit, show, or allow to examine or to offer or agree to do the same.

(c) "Exhibit" means to do 1 or more of the following:

(*i*) Present a performance.

(*ii*) Sell, give, or offer to agree to sell or give a ticket to a performance.

(*iii*) Admit a minor to premises where a performance is being presented or is about to be presented.

(d) "Minor" means a person less than 18 years of age.

(e) "Restricted area" means any of the following:

(i) An area where sexually explicit matter is displayed only in a manner that prevents public view of the lower 2/3 of the matter's cover or exterior.

(ii) A building, or a distinct and enclosed area or room within a building, if access by minors is prohibited, notice of the prohibition is prominently displayed, and access is monitored to prevent minors from entering.

(iii) An area with at least 75% of its perimeter surrounded by walls or solid, nontransparent dividers that are sufficiently high to prevent a minor in a nonrestricted area from viewing sexually explicit matter within the perimeter if the point of access provides prominent notice that access to minors is prohibited.

Sec. 2. As used in this part:

(a) "Nudity" means the lewd display of the human male or female genitals or pubic area.

(b) "Sexual excitement" means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

(c) "Erotic fondling" means touching a person's clothed or unclothed genitals, pubic area, buttocks, or, if the person is female, breasts, for the purpose of sexual gratification or stimulation.

(d) "Sadomasochistic abuse" means either of the following:

(i) Flagellation, or torture, for sexual stimulation or gratification, by or upon a person who is nude or clad only in undergarments or in a revealing or bizarre costume.

(ii) The condition of being fettered, bound, or otherwise physically restrained for sexual stimulation or gratification, of a person who is nude or clad only in undergarments or in a revealing or bizarre costume.

(e) "Sexual intercourse" means intercourse, real or simulated, whether genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex or between a human and an animal.

Sec. 4 As used in this part:

(a) "Harmful to minors" means sexually explicit matter that meets all of the following criteria:

(i) Considered as a whole, it appeals to the prurient interest of minors as determined by contemporary local community standards.

(ii) It is patently offensive to contemporary local community standards of adults as to what is suitable for minors.

(iii) Considered as a whole, it lacks serious literary, artistic, political, educational, and scientific value for minors.

(b) "Local community" means the county in which the matter was disseminated.

(c) "Prurient interest" means a lustful interest in sexual stimulation or gratification. In determining whether sexually explicit matter appeals to the prurient interest, the matter shall be judged with reference to average 17-year-old minors. If it appears from the character of the matter that it is designed to appeal to the prurient interest of a particular group of persons, including, but not limited to, homosexuals or sadomasochists, then the matter shall be judged with reference to average 17-year-old minors within the particular group for which it appears to be designed.

Sec. 12a. This part does not apply to any of the following:

(a) A medium of communication to the extent regulated by the federal communications commission.

(b) An internet service provider or computer network service provider that is not selling the sexually explicit matter being communicated but that provides the medium for communication of the matter. As used in this section, "internet service provider" means a person who provides a service that enables users to access content, information, electronic mail, or other services offered over the internet or a computer network.

(c) A person providing a subscription multichannel video service under terms of service that require the subscriber to meet both of the following conditions:

(i) The subscriber is not less than 18 years of age at the time of the subscription.

(ii) The subscriber proves that he or she is not less than 18 years of age through the use of a credit card, through the presentation of government-issued identification, or by other reasonable means of verifying the subscriber's age.

PART II

ULTRA-VIOLENT EXPLICIT VIDEO GAMES

Sec. 15. In light of section 51 of article IV of the state constitution of 1963, which directs that "The public health and general welfare of the people of the state are hereby declared to be matters of primary public concern. The legislature shall pass suitable laws for the protection and promotion of the public health.", and after hearing from expert witnesses

2

and law enforcement officials, considering the testimony of expert witnesses before other legislative bodies, and reviewing dozens of studies and metastudies of hundreds of studies, the legislature finds all of the following:

(a) Published research overwhelmingly finds that ultra-violent explicit video games are harmful to minors because minors who play ultra-violent explicit video games are consistently more likely to exhibit violent, asocial, or aggressive behavior and have feelings of aggression.

(b) Spokespersons for not less than 6 major national health associations have concluded and testified that after reviewing more than 1,000 studies, the studies "point overwhelmingly to a causal connection between media violence and aggressive behavior in some children", concluding that the effects of media violence on minors "are measurable and long-lasting".

(c) Law enforcement officers testified that recent statewide targeted enforcement efforts reveal that minors are capable of purchasing, and do purchase, ultra-violent explicit video games.

(d) Law enforcement officers testified about cases of minors acting out ultra-violent explicit video game behaviors by victimizing other citizens.

(e) The state has a legitimate and compelling interest in safeguarding both the physical and psychological well-being of minors.

(f) The state has a legitimate and compelling interest in preventing violent, aggressive, and asocial behavior from manifesting itself in minors.

(g) The state has a legitimate and compelling interest in directly and substantially alleviating the real-life harms perpetrated by minors who play ultra-violent explicit video games.

Sec. 16. As used in this part:

(a) "Computer" means any connected, directly interoperable or interactive device, equipment, or facility that uses a computer program or other instructions to perform specific operations including logical, arithmetic, or memory functions with or on computer data or a computer program and that can store, retrieve, alter, or communicate the results of the operations to a person, computer program, computer, computer system, or computer network.

(b) "Computer network" means the interconnection of hardwire or wireless communication lines with a computer through remote terminals, or a complex consisting of 2 or more interconnected computers.

(c) "Computer program" means a series of internal or external instructions communicated in a form acceptable to a computer that directs the functioning of a computer, computer system, or computer network in a manner designed to provide or produce products or results from the computer, computer system, or computer network.

(d) "Computer system" means a set of related, connected or unconnected, computer equipment, devices, software, or hardware.

(e) "Device" includes, but is not limited to, an electronic, magnetic, electrochemical, biochemical, hydraulic, optical, or organic object that performs input, output, or storage functions by the manipulation of electronic, magnetic, or other impulses.

(f) "Disseminate" means to sell, lend, give, exhibit, show, or allow to examine or to offer or agree to do the same.

(g) "Extreme and loathsome violence" means real or simulated graphic depictions of physical injuries or physical violence against parties who realistically appear to be human beings, including actions causing death, inflicting cruelty, dismemberment, decapitation, maiming, disfigurement, or other mutilation of body parts, murder, criminal sexual conduct, or torture.

(h) "Harmful to minors" means having all of the following characteristics:

(i) Considered as a whole, appeals to the morbid interest in asocial, aggressive behavior of minors as determined by contemporary local community standards.

(ii) Is patently offensive to contemporary local community standards of adults as to what is suitable for minors.

(iii) Considered as a whole, lacks serious literary, artistic, political, educational, or scientific value for minors.

(i) "Local community" means the county in which the video game was disseminated.

(j) "Minor" means a person less than 17 years of age.

(k) "Morbid interest in asocial, aggressive behavior" means a morbid interest in committing uncontrolled aggression against an individual. In determining whether an ultra-violent explicit video game appeals to this interest, the video game shall be judged with reference to average 16-year-old minors. If it appears from the character of the video game that it is designed to appeal to this interest of a particular group of persons, then the video game shall be judged with reference to average 16-year-old minors within the particular group for which it appears to be designed.

(l) "Ultra-violent explicit video game" means a video game that continually and repetitively depicts extreme and loathsome violence.

3

(m) "Video game" means an object or device that stores recorded data or instructions generated by a person who uses it, and by processing the data or instructions creates an interactive game capable of being played, viewed, or experienced on or through a computer, gaming system, game console, or other technology.

Sec. 17. (1) A person shall not knowingly disseminate to a minor an ultra-violent explicit video game that is harmful to minors. Except as provided in subsections (2) and (3), a person who violates this subsection is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $5,000.00.

(2) A person who violates subsection (1) and who has 1 prior determination of responsibility under this section is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $15,000.00.

(3) A person who violates subsection (1) and who has 2 or more prior determinations of responsibility under this section is responsible for a state civil infraction and may be ordered to pay a civil fine of not more than $40,000.00. In imposing a fine under this subsection, the court shall consider the scope of the defendant's commercial activity in disseminating ultra-violent explicit video games to minors.

Sec. 18. Section 17 does not apply to the dissemination of an ultra-violent explicit video game to a minor by any of the following:

(a) A parent or guardian who disseminates an ultra-violent explicit video game to his or her child or ward.

(b) An immediate family member of the minor who disseminates an ultra-violent explicit video game to the minor in the immediate family member's residence or the minor's residence.

(c) An individual who disseminates an ultra-violent video game to a minor who is a guest in the individual's residence.

(d) An individual who disseminates an ultra-violent explicit video game for a legitimate medical, scientific, governmental, or judicial purpose.

Sec. 19. (1) A person shall not knowingly make a false representation that he or she is the parent or guardian of a minor, or that a minor is 17 years of age or older, with the intent to facilitate the dissemination to the minor of an ultra-violent explicit video game that is harmful to minors. A person knowingly makes a false representation as to the age of a minor or as to the status of being the parent or guardian of a minor if the person either is aware that the representation is false or recklessly disregards a substantial risk that the representation is false.

(2) A person who violates subsection (1) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $15,000.00, or both.

Sec. 20. A person who possesses managerial responsibility for a business enterprise renting or selling ultra-violent explicit video games that are harmful to minors shall not knowingly permit a minor who is not accompanied by a parent or guardian to play or view the playing of an ultra-violent explicit video game that is harmful to minors. A person who violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $25,000.00, or both.

Sec. 21. (1) A person knowingly disseminates an ultra-violent explicit video game to a minor if the person knows both the nature of the video game and the status of the minor to whom the video game is disseminated.

(2) A person knows the nature of the ultra-violent explicit video game if the person either is aware of its character and content or recklessly disregards circumstances suggesting its character and content.

(3) A person knows the status of a minor if the person either is aware that the person to whom the dissemination is made is a minor or recklessly disregards a substantial risk that the person to whom the dissemination is made is a minor.

Sec. 22. A conviction, sentence, or determination of responsibility for a violation of this part does not preclude a conviction, sentence, or determination of responsibility for a violation of any other law of this state arising from the same transaction.

Sec. 23. (1) It is an affirmative defense to an alleged violation under this part that the person acted in good faith. Except as provided in subsection (2), good faith exists if at the time the alleged violation occurs all of the following conditions are satisfied:

(a) The minor shows the person identification that appears to be valid and that contains a photograph and a date of birth purporting to show that the minor is 17 years of age or older, or the service terms of the internet provider of a seller or rental enterprise that sells or rents ultra-violent explicit video games over the internet require a purchaser or renter to be 17 years of age or older if all of the following conditions are met:

(i) The ultra-violent explicit video game is purchased or rented over the internet.

4

(*ii*) The ultra-violent explicit video game is sent to the purchaser's or renter's home or place of residence or otherwise made directly available through the internet to the purchaser or renter.

(*iii*) The purchaser or renter of the ultra-violent explicit video game uses a credit card to purchase or rent the ultra-violent explicit video game.

(b) The person does not have independent knowledge that the minor is under 17 years of age.

(c) Relying upon information described in subdivisions (a) and (b), the person complies with a rating system established by the pertinent entertainment industry that does not conflict with this part.

(2) If the person possesses managerial responsibility for a business enterprise, good faith exists if at the time the alleged violation occurs the business enterprise satisfies all of the following conditions:

(a) The business enterprise has in existence a policy that its employees are required to comply with a rating system established by the pertinent entertainment industry that does not conflict with this part.

(b) The business enterprise trains its employees to follow the policy described in subdivision (a).

(c) The business enterprise enforces the policy described in subdivision (a).

Enacting section 1. This amendatory act takes effect December 1, 2005.

Enacting section 2. This amendatory act does not take effect unless all of the following bills of the 93rd Legislature are enacted into law:

(a) Senate Bill No. 463.

(b) House Bill No. 4702.

(c) House Bill No. 4703.

This act is ordered to take immediate effect.

_Carol Morey Viventi_

---
Secretary of the Senate

_Gary E. Randall_

---
Clerk of the House of Representatives

Approved _____

_____
Governor

5