# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ATHENACO, LTD d/b/a ATHENA BOOK SHOP;
BOOKS & MORE OF ALBION LLC; LOWRY'S BOOK,
L.L.C.; ROONEY FAMILY LLC d/b/a NICOLA'S
BOOKS LITTLE PROFESSOR; SCHULER BOOKS,
INC.; SHAMAN DRUM BOOKSHOP, INC.;
AMERICAN BOOKSELLERS FOUNDATION FOR
FREE EXPRESSION, INC.; ASSOCIATION OF
AMERICAN PUBLISHERS, INC.; COMIC BOOK
LEGAL DEFENSE FUND; FREEDOM TO READ
FOUNDATION; GREAT LAKES BOOKSELLERS
ASSOCIATION; and INTERNATIONAL PERIODICAL
DISTRIBUTORS ASSOCIATION, INC.,

        Plaintiffs,

v.

MIKE COX, in his official capacity as ATTORNEY
GENERAL OF THE STATE OF MICHIGAN; THOMAS
JAY WEICHEL, Alcona County Prosecuting Attorney;
KAREN BAHRMAN, Alger County Prosecuting Attorney;
FREDERICK L. ANDERSON, Allegan County
Prosecuting Attorney; DENNIS P. GRNKOWICZ, Alpena
County Prosecuting Attorney; CHARLES H. KOOP,
Antrim County Prosecuting Attorney; CURTIS
BROUGHTON, Arenac County Prosecuting Attorney;
JOSEPH O'LEARY, Baraga County Prosecuting Attorney;
SHANE MCNEILL, Barry County Prosecuting Attorney;
JOSEPH K. SHEERAN, Bay County Prosecuting Attorney;
ANTHONY J. CICCELLI, Benzie County Prosecuting
Attorney; JIM CHERRY, Berrien County Prosecuting
Attorney; KIRK KASHIAN, Branch County Prosecuting
Attorney; JOHN HALLACY, Calhoun County Prosecuting
Attorney; SCOTT L. TETER, Cass County Prosecuting
Attorney; MARY BETH KUR, Charlevoix County
Prosecuting Attorney; MICKEY CASTAGNE, Cheboygan
County Prosecuting Attorney; BRIAN PEPPLER,
Chippewa County Prosecuting Attorney; NORMAN M.
GAGE, Clare County Prosecuting Attorney; CHARLES D.
SHERMAN, Clinton County Prosecuting Attorney; JOHN
HUSS, Crawford County Prosecuting Attorney; THOMAS
L. SMITHSON, Delta County Prosecuting Attorney;

Civil Case No. 04-70027

HON. ANNA DIGGS TAYLOR



SEP 1 3 2004

PUBLIC EMPLOYMENT,
ELECTIONS & TORT

CHRISTOPHER NINOMIYA, Dickinson County
Prosecuting Attorney; JEFFREY L. SAUTER, Eaton
County Prosecuting Attorney; ROBERT J. ENGEL, Emmet
County Prosecuting Attorney; ARTHUR A. BUSCH,
Genesee County Prosecuting Attorney; THOMAS R.
EVANS, Gladwin County Prosecuting Attorney;
RICHARD B. ADAMS, Gogebic County Prosecuting
Attorney; DENNIS M. LABELLE, Grand Traverse County
Prosecuting Attorney; KEITH J. KUSHION, Gratiot
County Prosecuting Attorney; NEAL A. BRADY, Hillsdale
County Prosecuting Attorney; DOUGLAS S. EDWARDS,
Houghton County Prosecuting Attorney; MARK J.
GAERTNER, Huron County Prosecuting Attorney;
STUART J. DUNNINGS, III, Ingham County Prosecuting
Attorney; GAIL BENDA, Ionia County Prosecuting
Attorney; GARY W. RAPP, Iosco County Prosecuting
Attorney; JOSEPH C. SARTORELLI, Iron County
Prosecuting Attorney; LARRY J. BURDICK, Isabella
County Prosecuting Attorney; HENRY C. ZAVISLAK,
Jackson County Prosecuting Attorney; JAMES J.
GREGART, Kalamazoo County Prosecuting Attorney;
BRIAN DONNELLY, Kalkaska County Prosecuting
Attorney; WILLIAM A. FORSYTH, Kent County
Prosecuting Attorney; DONNA JAASKELAINEN,
Keweenaw County Prosecuting Attorney; DAVE
WOODRUFF, Lake County Prosecuting Attorney;
BYRON KONSCHUH, Lapeer County Prosecuting
Attorney; SARAH BRUBAKER, Leelanau County
Prosecuting Attorney; IRVING C. SHAW, JR., Lenawee
County Prosecuting Attorney; DAVID L. MORSE,
Livingston County Prosecuting Attorney; PETER
TAZELAAR, Luce County Prosecuting Attorney; W.
CLAYTON GRAHAM, Mackinac County Prosecuting
Attorney, CARL J. MARLINGA, Macomb County
Prosecuting Attorney; FORD STONE, Manistee County
Prosecuting Attorney; GARY L. WALKER, Marquette
County Prosecuting Attorney; CHRIS J. VAN
OOSTERUM, Mason County Prosecuting Attorney;
PETER M. JAKLEVIC, Mecosta County Prosecuting
Attorney; DANIEL E. HASS, Menominee County
Prosecuting Attorney; NORMAN W. DONKER, Midland
County Prosecuting Attorney; BILL DONNELLY,
Missaukee County Prosecuting Attorney; MIKE

WEIPERT, Monroe County Prosecuting Attorney;
ANDREA S. KRAUSE, Montcalm County Prosecuting
Attorney; BENJAMIN T. BOSLER, Montmorency County
Prosecuting Attorney; TONY D. TAGUE, Muskegon
County Prosecuting Attorney; CHRYSTAL ROACH,
Newaygo County Prosecuting Attorney; DAVID G.
GORCYCA, Oakland County Prosecuting Attorney;
TERRY L. SHAW, Oceana County Prosecuting Attorney;
DARRIS RICHARDS, Ogemaw County Prosecuting
Attorney; JAY FINCH, Ontonagon County Prosecuting
Attorney; SANDRA MARVIN, Osceola County
Prosecuting Attorney; BARRY O. SHANTZ, Oscoda
County Prosecuting Attorney; KEVIN L. HESSELINK,
Otsego County Prosecuting Attorney; RONALD J.
FRANTZ, Ottawa County Prosecuting Attorney; DONALD
J. MCLENNAN, Presque Isle County Prosecuting
Attorney; THOMAS SWANSON, Roscommon County
Prosecuting Attorney; MICHAEL D. THOMAS, Saginaw
County Prosecuting Attorney; JAMES V. YOUNG, Sanilac
County Prosecuting Attorney; PETER HOLLENBECK,
Schoolcraft County Prosecuting Attorney; RANDY
COLBRY, Shiawassee County Prosecuting Attorney;
PETER R. GEORGE, St. Clair County Prosecuting
Attorney; DOUGLAS FISHER, St. Joseph County
Prosecuting Attorney; MARK RENEE, Tuscola County
Prosecuting Attorney; JURIS KAPS, Van Buren County
Prosecuting Attorney; BRIAN L. MACKIE, Washtenaw
County Prosecuting Attorney; MIKE DUGGAN, Wayne
County Prosecuting Attorney; and WILLIAM M.
FAGERMAN, Wexford County Prosecuting Attorney, in
their official capacities as PROSECUTING ATTORNEYS,

           Defendants.

---

## MEMORANDUM OPINION & ORDER

Before the court is a facial challenge to amendments to a Michigan statute governing the

dissemination, exhibition and display of sexually explicit materials deemed harmful to minors.

2003 Mich. Public Act 192, M.C.L. §§ 722.671 (a), (b) and (e), 722.675 and 722.677; M.S.A. §§

25.254(1)(a),(b) and (e),(5), (7) (*hereinafter* the "Act")  For the reasons explained more fully herein, the court must reject Plaintiffs' challenge.

## I.

Plaintiffs are bookstore proprietors and trade associations that represent book, magazine and recording publishers, retailers and distributors.[1] Plaintiffs maintain that their stores and members carry materials that may be deemed harmful to minors by Defendants, pursuant to the Act; that they fear prosecution under the Act; that physically complying with the Act's requirements places them in the untenable position of infringing upon the First Amendment rights of others to browse among their merchandise; and that compliance with the Act could result in Plaintiffs being mischaracterized as "adult bookstores."  Plaintiffs seek to have the Act declared void on its face, alleging that it is vague and overbroad.  Defendants, Michigan's Attorney General and the State's eighty-three (83) county prosecutors, counter that the Act is not written as broadly as Plaintiffs interpret it to be; that the Act merely regulates the manner in which certain materials may be displayed, not the materials' content; and that the Act has narrowly defined the term "harmful to minors" in a manner that is constitutional.  Defendants also point out that Plaintiffs do not contest the definitions of sexually explicit material or the term "harmful to minors" which have existed since 1978. 1978 Public Act 33, M C L §§ 722.673- 674; M S.A. §§ 25.254(4), (5).

The Act imposes criminal liability for those who knowingly disseminate or distribute sexually explicit matter that is harmful to minors.  The State considers anyone less than 18 years of age to be a minor. M C.L. § 722.671(d); M S.A. 25.254(1)(d).  A person who disseminates

---

[1] *Hereinafter* referred to collectively as "booksellers."

4

material proscribed by the Act is subject to a maximum penalty of 2 years in prison and/or a fine

of $10,000. M.C.L § 722.675; M.S.A. §25.254(5)[2]  Persons with managerial responsibility who

display prohibited material face up to 93 days imprisonment and/or a fine of not more than

$5,000, unless they display the material in a restricted area. M C.L § 722 677; M.S.A §

25.254(7)[3]

     Signed on November 5, 2003, the Act was slated to take effect January 1, 2004. Plaintiffs

---

[2]M C L. § 722 675; M S A. § 25 254(5) states:

(1) A person is guilty of disseminating sexually explicit matter to a minor if that person does either of the following:

(a) Knowingly disseminates to a minor sexually explicit visual or verbal material that is harmful to minors

(b) Knowingly exhibits to a minor a sexually explicit performance that is harmful to minors.

(2) A person knowingly disseminates sexually explicit matter to a minor if the person knows both the nature of the matter and the status of the minor to whom the matter is disseminated.

(3) A person knows the nature of matter if the person either is aware of its character and content or recklessly disregards circumstances suggesting its character and content.

(4) A person knows the status of a minor if the person either is aware that the person to whom the dissemination is made is under 18 years of age or recklessly disregards a substantial risk that the person to whom the dissemination is made is under 18 years of age.

(5) Disseminating sexually explicit matter to a minor is a felony punishable by imprisonment for not more than 2 years or a fine of not more than $10,000 00, or both  In imposing the fine, the court shall consider the scope of the defendant's commercial activity in disseminating sexually explicit matter to minors

[3] M.C.L. 722.677 states that:

(1) A person is guilty of displaying sexually explicit matter to a minor if that person possesses managerial responsibility for a business enterprise selling sexually explicit visual material that visually depicts sexual intercourse or sadomasochistic abuse and is harmful to minors, and that person does either of the following:

(a) Knowingly permits a minor who is not accompanied by a parent or guardian to view that matter.

(b) Displays that matter knowing its nature, unless the person does so in a restricted area

(2) A person knowingly permits a minor to view visual matter that depicts sexual intercourse or sadomasochistic abuse and is harmful to minors if the person knows both the nature of the matter and the status of the minor permitted to examine the matter.

(3) A person knows the nature of the matter if the person either is aware of its character and content or recklessly disregards circumstances suggesting its character and content

(4) A person knows the status of a minor if the person either is aware that the person who is permitted to view the matter is under 18 years of age or recklessly disregards a substantial risk that the person who is permitted to view the matter is under 18 years of age

(5) A person who violates subsection (1) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $5,000 00, or both.

initially filed a motion for preliminary injunction. The parties stipulated to convert Plaintiffs'

original motion for preliminary injunction into a motion for summary judgment. In *lieu* of filing

an answer, Defendants also filed a motion for summary judgment and agreed to stay the Act's

enforcement until this court ruled upon the merits. This memorandum constitutes the court's

findings of fact and law on the Act's constitutionality

## II.

***Standard of Review***

Summary judgment will issue if the moving party demonstrates that there is no genuine

issue of material fact and that the undisputed facts of record indicate that the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc*, 477

U.S. 242, 247-48 (1986). In order to mount a successful facial challenge, Plaintiffs must establish

that no set of circumstances exist under which the Act would be valid. *U.S. v Salerno*, 481 U.S.

739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). If the Act is readily susceptible to a

narrowing construction that would make it constitutional, it must be upheld. *Erzoznik v. City of*

*Jacksonville*, 422 U.S. 205, 216, 95 S. Ct. 2268, 2276, 45 L. Ed. 2d 125 (1975). Additionally,

Michigan courts presume that all legislation is constitutional and are bound by the state's

Constitution to construe legislation to preserve its constitutionality *DeRose v. DeRose*, 469 Mich.

320, 326 (2003); *People v Neumayer*, 405 Mich. 341, 362 (1979). The court will not, however,

rewrite laws to make them constitutional. *Eubanks v. Wilkinson*, 937 F. 2d 1118,1122 (6th Cir.

1991). The state legislature must draft its own statutes. Furthermore, in adjudicating facial

challenges, the court must proceed "with caution and restraint, as invalidation may result in

6

unnecessary interference with a state regulatory program."[4] *Erzoznik, supra*, 422 U.S. at 216, 95

S. Ct. at 2276, 45 L. Ed. 2d 125.

**III.**

**A.    Overbreadth**

      The court's task is to determine whether the Act reaches a substantial amount of

constitutionally protected conduct. *Village of Hoffman Est. v. Flipside, Hoffman Est.*, 455 U.S.

489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1987). If not, the overbreadth challenge must fail.

*Id.* The overbreadth doctrine should be employed hesitantly and as a matter of last resort.

*American Booksellers v. Webb*, 919 F.2d 1493, 1502 (11th Cir. 1990).

      1    Challenged Provisions

      Plaintiffs aver that the Act significantly expands the definitions section of the Michigan

statute in question to now include written descriptions as well as visual depictions in the category

of materials that booksellers must not "allow" minors to examine. As an initial matter, the court

must clarify that Plaintiffs only challenge the amendments which became effective on January 1,

2004. Those amendments: (i) added the display definition, M.C.L. § 722.671(a), M.S.A. §

25.254(1)(a); (ii) expounded upon the dissemination definition by adding the terms "exhibit" and

"allow to examine," M.C.L. § 722.671(b), M.S.A. § 25.254(1)(b); (iii) added and defined the term

"restricted area," M.C.L. § 722.671(c), M.S.A. § 25.254(1)(c); (iv) deleted clauses in the

definitions, dissemination and display provisions that attempted to regulate minors' access to

sexually explicit materials on the internet, M.C.L. § 722.673, 675, 677, M.S.A. § 25.254(3),(5),

---

[4] In the interest of comity, this court queried counsel at oral argument about certifying questions of law concerning the Act's contested provisions to the Michigan Supreme Court. E.D. Mich. L.R. 83.40; M.C.R. 7.305(B). Counsel for both parties insisted, however, that certification was inappropriate.

7

(7), *see also, Cyberspace Communications v Engler*, 142 F. Supp. 2d 827 (E.D. Mich. 2001)(permanently enjoining enforcement of the internet-related provisions); (v) substituted the terms "sexually explicit visual material" and "view" for the previously used terms "visual matter" and "examine," M.C.L. § 722.677, M.S.A. § 25.254(7); and, (vi) added the term "visually" to modify the term "depicts," M.C.L. § 722.677, M.S.A. § 25.254(7)

The written descriptions provision that Plaintiffs insist the Act has added is not new at all. In fact, the written descriptions provision Plaintiffs complain of here actually is excerpted from the definition of sexually explicit verbal material. Sexually explicit verbal material is one category of sexually explicit matter. M.C.L. § 722.673(c), M.S.A. § 25.254(3)(c)(referring to "an explicit and detailed verbal description or narrative account of sexual excitement, erotic fondling, sexual intercourse, or sadomasochistic abuse"). In the instant action, Plaintiffs have declined to, and specifically disavow any attempt to, challenge the definitions of sexually explicit matter, or any other aspect of Michigan's harmful to minors statute, save the January 1, 2004 amendments. Indeed, Plaintiffs could not successfully mount such a challenge because, with the exception of the last five (5) years when the failed internet provisions were added and eventually stricken, Plaintiffs have operated under the same definitions of sexually explicit matter, including sexually explicit verbal material, since 1978. *Id.*; 1999 Public Act 33; 1978 Public Act 33. Thus, the Act does not expand, in any way, the universe of materials that are governed by the statute, but rather only revises the manner in which sexually explicit materials may be displayed or disseminated to minors.

8

2    First Amendment Analysis

a.    Scope of Materials to Which the Act Applies

Plaintiffs contend that books like Nabokov's *Lolita*, Faulkner's *Sanctuary*, Steinbeck's *Of Mice and Men*, Salinger's *The Catcher in the Rye*, Roth's *Portnoy's Complaint*, and Comfort's *Joy of Sex*, could be deemed harmful to minors and, thus, subject to the Act's dissemination and display proscriptions. A three (3)-part, conjunctive test sets forth what materials are harmful to minors and, thus, subject to statutory regulation. Such materials, taken as a whole a) appeal to minors' prurient interest as determined by contemporary local community standards; b) are patently offensive to contemporary local community standards of what is suitable for minors; and c) lack serious literary, artistic, political, educational, and scientific value for minors. M.C.L. § 722.674; M.S.A. § 25.254(4); *Miller v. California*, 413 U.S. 15, 24-25, 93 S. Ct. 2607, 2613, 37 L. Ed. 2d 419 (1973). Prurient interest and patent offensiveness are issues of fact. *Pope v. Illinois*, 481 U.S. 497, 500-501, 107 S. Ct. 1918, 1921, 95 L. Ed. 2d 439 (1987). A work's value or merit is a mixed question of law and fact determined using a reasonable person standard. The Court has instructed that,

> Just as the ideas a work represents need not obtain majority approval to merit protection, neither, insofar as the First Amendment is concerned, does the value of the work vary from community to community based on the degree of local acceptance it has won. The proper inquiry is not whether an ordinary member of any given community would find serious literary, artistic, political, or scientific value in allegedly obscene material, but whether a reasonable person would find such value in the material, taken as a whole. *Id.*

Michigan has codified the *Miller* standard and has elaborated upon it. "'Local community' means the county in which the matter was disseminated." M.C.L. § 722.674; M.S.A. 25.254(4). "Prurient interest" refers to a lustful interest in sexual stimulation or gratification and

must be judged with reference to average seventeen (17)-year-old minors. *Id*[5]

The only materials subject to the Act's restrictions are those that meet all three (3) aspects of the *Miller* test–those that appeal to the prurient interest of the average seventeen (17)-year-old *and* are patently offensive according to the community standards in the county where the material is sold or exhibited *and* lack any literary or artistic merit. M.C.L. § 722.674; M.S.A. § 25.254(4); *Miller*, 413 U.S. at 24-25, 93 S. Ct. 2607, 2613, 37 L. Ed. 2d 419. Plaintiffs' concede that their concern is that the Act potentially targets serious works of literature.[6] Works having serious literary value are not harmful to minors by statutory definition, and thus, are not subject to the Act. M.C.L. § 722.674; M.S.A. § 25.254(4). As the Virginia Supreme Court noted, "because it is criminal in nature, the statute is not to be given the broad interpretation the booksellers apprehend." 236 Va. 168, 179 (1988)(interpreting a similar statute upon receiving questions certified from the United States Supreme Court). Thus, works that Plaintiffs fear will be targeted, like *Lolita, Sanctuary, Of Mice and Men, The Catcher in the Rye, Portnoy's Complaint,* and *Joy of Sex,* are not subject to the Act's proscriptions because a reasonable person could conclude that those works clearly have literary and educational merit for minors.

---

[5] The definition of "prurient interest" goes on to specify that,

> If it appears from the character of the matter that is designed to appeal to the prurient interest of a particular group of persons, including, but not limited to, homosexuals or sadomasochists, then the matter shall be judged with reference to average 17-year-old minors within the particular group for which it appears to be designed. M.C.L. § 722.674; M.S.A. 25.254(4)

[6] "The case is not about marginal or esoteric items within such bookstores; it is about serious works of literature, popular bestsellers, and a diverse range of books of art and psychology." Pls.' Mem. of Law in Supp. of Mot. for Prelim. Inj. at 5.

The court is unpersuaded by Plaintiffs' argument that the Act is somehow vague because the literary merit prong does not apply to a specific age group.[7] The court is constrained to agree with Defendants that Plaintiffs have operated under the definitions codified in M.C.L. §722.674, M.S.A. 25.254(4), since 1978, and do not credibly establish how the Act's recent amendments to separate and distinct statutory provisions throws any section of the harmful to minors' definition, and by extension, the category of materials to which that definition applies, into doubt.

        b.    Restricted Adult Access

Plaintiffs argue that, in order to comply with the Act, they are left to choose from one of four equally unappealing options. Plaintiffs could eliminate from their inventories, altogether, any books that are potentially harmful to minors. They could put such works in a segregated, "adult" section of the store which would make it embarrassing for adults to browse, thereby chilling their constitutional right of access to such materials. Booksellers could place such works behind the counter and furnish them only upon specific request, also resulting in embarrassment to those who have to ask for them or decreased sales because browsing books on display is what drives sales. Finally, Plaintiffs could exclude minors from their stores entirely, to their own economic detriment because minors, and those who buy books for minors, comprise a significant portion of their customer base. Defendants respond that Plaintiffs overstate the Act's reach and that the Act places only a minimal burden on adult consumers and Plaintiffs.

---

[7]Plaintiffs' counsel's dogged determination to pursue the merits of the harmful to minors provision, even after conceding that the instant facial challenge goes only to the amendments that took effect on January 1, 2004, needlessly, and bordering on irresponsibly, muddles the issues and the law under which his clients have operated for over a quarter century

11

Obscene material is not protected by the First Amendment. *Miller v. California*, 413 U.S. 15, 21, 93 S. Ct. 2607, 2613, 37 L. Ed. 2d 419 (1973). States have a long-established, compelling interest in regulating subjects concerning minors' well-being, including the right to prohibit the display and dissemination of sexually explicit materials to minors that are harmful to them, but that would not be considered obscene for an adult. *Id.* at 23, 95 S. Ct. at 2614, 37 L. Ed. 2d 419; *Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195. That interest, however, does not justify an unnecessarily broad suppression of speech addressed to adults. *Reno v. ACLU*, 521 U.S. 844, 874, 117 S. Ct. 2329, 2346, 138 L. Ed. 2d 874 (1997). Content-based restrictions on speech may only survive if the state demonstrates that the restriction is both necessary to achieve a compelling state interest, and is narrowly tailored. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). Thus, states must engage in a delicate balancing act to protect minors without unduly restricting adults' access to non-obscene materials by carefully, and narrowly limiting statutes that regulate obscenity. *Miller*, at 23, 95 S. Ct. at 2614, 37 L. Ed. 2d 419. This balancing test is not relevantly distinct, in the instant matter, from the determination of what constitutes a reasonable time, place and manner restriction. *American Booksellers v. Webb*, 919 F.2d 1493, 1502 (11 th Cir. 1990)(stating that, under either test, the crucial inquiry is "whether the restriction on adults' access to protected speech is unnecessarily burdensome or 'significant,' or, stated differently, whether alternate modes of adult access are unduly restricted"). Reasonable time, place and manner restrictions may be upheld if, and only if, the restrictions 1) are not based on content or subject matter, 2) are narrowly drawn, 3) further a significant governmental interest, and 4) allow for sufficient alternative forms of expression. *Id.* (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41,

106 S. Ct. 925, 89 L. Ed. 2d 29(1986))

The Act does, indeed, regulate how certain materials may be disseminated or displayed because they are sexually explicit and, thereby, implicates free speech. An adult's ability to browse books freely without peering behind blinder racks or venturing into cordoned off areas in a retail establishment are restricted under the Act. Upon a cursory review, it may appear that the Act reaches a substantial amount of constitutional conduct. Such an interpretation, however, is misguided. As discussed above, the Act's sweep is not as broad as Plaintiffs apprehend because materials must meet all three (3) aspects of the *Miller* test in order to be subject to the display and dissemination restrictions. Furthermore, adults have no constitutional entitlement to unfettered access to non-obscene materials. *Miller,* at 23, 95 S. Ct. at 2614, 37 L. Ed. 2d 419. By allowing, for example, the display of such materials in a manner whereby the bottom 2/3 of the cover is not visible or in a separate area in the store, the Act strikes the necessary balance between furthering the State's well-established interest in preventing minors from viewing sexually explicit material that is inappropriate for them while preserving adults' ability to access that same material without undue burden. *Id; Webb,* 919 F.2d at 1509 (finding that placing material deemed harmful to minors behind blinder racks "only slightly burdens adults' access to such material...," because "[a]dults may peruse and purchase the material without restriction").

The court finds that the Act is not overbroad because the challenged provisions all refer to materials that are harmful to minors as defined in M.C.L. § 722.674; M.S.A. § 25.254(4), which provides an adequate restriction upon the Act's operation. Further, the Act does not prevent Plaintiffs from selling or showing non-obscene sexually explicit materials for adults to view, but rather only restricts the manner in which the materials may be displayed. The Act, then, does not

13

unconstitutionally infringe on adults' rights because it does not confine adults to a literary collection that is only suitable for young children. *Ginsberg*, 390 U.S. at 634-35; 88 S. Ct. at 1277-78, 20 L. Ed. 2d 195 (citing *Butler v. Michigan*, 352 U.S. 380, 383-84, 77 S. Ct. 524, 1 L. Ed. 2d 412 (1957)).

Upon proper analysis, the Act does not reach a substantial portion of constitutionally protected conduct. As such, the overbreadth challenge must fail. *Hoffman Estates*, 455 U.S. at 499, 102 S. Ct. at 1193, 71 L. Ed. 2d 362.

**B.     Vagueness**

Even if the Act does not implicate constitutionally protected conduct and, thus, is not overbroad, the Act may still be vague. A court may strike a statute for vagueness only if it is impermissibly vague in all of its applications. *Hoffman Estates*, 455 U.S. at 499, 102 S. Ct. at 1193, 71 L. Ed. 2d 362. A statute lacking clearly defined provisions is void for vagueness as it fails to satisfy due process. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972). Legislation must 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and, 2) provide explicit standards such that arbitrary and discriminatory enforcement is prevented. *Id.* (internal citations omitted); *see also, Kolender v. Lawson*, 461 U.S. 353, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). The degree of constitutionally permitted vagueness varies based on the nature of the legislation. *Hoffman Estates*, 455 U.S. at 498, 102 S. Ct. at 1193, 71 L. Ed. 2d 362. The level of imprecision tolerated in statutes that impose criminal liability is virtually nil.

14

In the First Amendment context, a statute is vague if it overly chills speech, that is, if it interferes with free speech rights by causing citizens to "steer far wider of the unlawful zone," than they otherwise would "if the boundaries of the forbidden areas were clearly marked." *Grayned, supra,* 408 U.S. at 108, 92 S. Ct. 2298, 33 L. Ed. 2d 222; *Hoffman Estates,* 455 U.S. at 499, 102 S. Ct. at 1193, 71 L. Ed. 2d 362. Moreover, a statute's scienter requirement may mitigate its vagueness, particularly concerning the adequacy of notice provided that certain conduct is proscribed and subject to criminal liability. *Hoffman Estates,* 455 U.S at 499, 102 S. Ct. at 1193, 71 L. Ed. 2d 362.

Statutory construction begins with the plain meaning of the words in the statute itself. *U.S. v. Loehr,* 966 F.2d 201, 204 (6th Cir. 1992). When more than one statutory interpretation is possible and one of those raises doubts as to constitutional validity, the court must adopt the interpretation that avoids doubt as to constitutionality unless that construction plainly is contrary to the legislature's intent.[8] *Concrete Pipe and Prod. of Cal. v. Construction Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 113 S. Ct. 2264, 124 L. Ed 2d 539 (1993). Further, Michigan courts begin their statutory construction analysis with the presumption that a statute is constitutional unless its unconstitutionality is readily apparent. *DeRose,* 469 Mich. at 326.

M.C.L § 722.671; M.S.A. 25.254 (1),states, in relevant part, that:

a) "Display" means to put or set out to view or to make visible.
b) "Disseminate" means to sell, lend, give, exhibit, show, or allow to examine or to offer or agree to do the same.

e) "Restricted area" means any of the following:
(i) An area where sexually explicit matter is displayed only in a manner that prevents

---

[8] The court notes that neither party has provided any information whereby this court could determine the legislature's intent in passing the Act.

15

public view of the lower 2/3 of the matter's cover or exterior.
(ii)A building, or a distinct and enclosed area or room within a building, if access by
minors is prohibited, notice of the prohibition is prominently displayed, and access is
monitored to prevent minors from entering
(iii) An area with at least 75% of its perimeter surrounded by walls or solid,
nontransparent dividers that are sufficiently high to prevent a minor in a nonrestricted area
from viewing sexually explicit matter within the perimeter if the point of access provides
prominent notice that access to minors is prohibited.

There are three provisions in the Act's definitions section that Plaintiffs aver do not

provide fair notice of what actions will result in criminal liability and are, thus, impermissibly

vague in violation of the Fifth Amendment to the United States Constitution. First, Plaintiffs are

unclear as to whether the "put or set out to view" explanation of the display provision, or the

"examine" and "show" provisions of the dissemination definition, apply to materials' contents if

the covers are not harmful to minors. M.C.L. §722.671(a), M.S.A. §25.254(1)(a); M.C.L. §

722.671(b); M.S.A. 25.254(1)(b). Second, the "allow to examine" explanation of the term

"disseminate," Plaintiffs urge, does not provide adequate guidance on whether sellers must

implement procedures so that no minor can examine prohibited material, or whether a retailer

only must stop a minor from examining such material if the retailer catches the minor in the act,

so to speak. M.C.L. § 722.671(b); M.S.A. § 25.254(1)(b). Third, Plaintiffs state that it is not

apparent what the term "only" modifies in the explanation of what constitutes a "restricted area"

under the Act. M.C.L. § 722.671(e)(i); M.S.A. § 25.254(1)(e)(i). Plaintiffs fear that the Act

requires that they be familiar with the contents of every book in their inventory, an obviously

unmanageable task. Defendants counter that, when read in the context of the entire statute, the

contested terms are clear and unambiguous.

16

1. Covers or Content

A    "Put or set out to view," M.C.L. § 722.671(a), M.S.A. 25.254(1)(a).

When considering the plain meaning of the terms "put or set out to view," the court finds

that the term is synonymous with the phrase "to make visible," that is also included in the

definitions section. M.C.L. § 722.671(a), M.S.A. 25.254(1)(a). To define "put or set out to view,"

any other way would be to cast doubt on the terms' constitutionality by way of unnecessary

contortion, not legislative design. *Concrete Pipe and Prod. of Cal. v. Construction Laborers*

*Pension Trust for S. Cal.*, 508 U.S. 602, 113 S. Ct. 2264, 124 L. Ed.2d 539 (1993). The court is

bound to construe the terms in a manner that casts the least doubt on their constitutionality and

that permits the Act to survive. *Id.*; *Neumayer*, 405 Mich. at 362. By placing the contested term

back into the context of the surrounding statutory provisions, its constitutionality can be

preserved. For example, the Act prohibits the display of sexually explicit material that is harmful

to minors unless such material is displayed in a restricted area. M.C. L. 722.677(1)(b); M.S.A.

25.254(7)(1)(b). If the phrase "put or set out to view" is substituted for the word "display," in the

statutory definition of the term "restricted area," as "an area where sexually explicit matter is [put

or set out to view] only in a manner that prevents public view of the lower 2/3 of the matter's

cover or exterior," it becomes clear that what is restricted is the material made visible to the

public, the cover or the binding in the case of books.

B.    "Exhibit," and "Show," M.C.L. § 722.671(b), M.S.A. 25.254(1)(b).

Plaintiffs state that they are confused as to whether the terms "exhibit" or "show" may

apply to the content as well as covers of prohibited material. The intended application of the

terms "exhibit" or "show" is evidenced by the statute's plain language. In fact, the dictionary

17

definition of the term "exhibit" is to "show externally" or "to present for the public to view"

*American Heritage Dictionary, 2d College Edition* (1976). Similar to the phrase "put or set out,"

then, the terms "exhibit" or "show" can be limited to materials' covers or bindings. The court

acknowledges that, occasionally, books are arranged, so that their contents are made visible to the

public. The parties' briefs, however, do not convey that this sort of activity, arranging books in an

open fashion such that the contents are presented for the public to view, is what either the

Plaintiffs fear prosecution for, or what the State is attempting to regulate, under the Act. Again,

fashioning the terms "exhibit" or "show" to apply to materials' contents clouds the Act's

constitutionality by contrivance.

To the extent that the terms "put or set out to view,""exhibit" or "show" in the

dissemination context *may* apply to contents, such an application is not constitutionally offensive.[9]

Content-based restrictions on speech may survive only if the state demonstrates that the

restriction is both necessary to achieve a compelling state interest, and is narrowly tailored to

reach that end. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S. Ct.

948, 74 L. Ed. 2d 794 (1983). Moreover, the Act's scienter requirement of knowledge or reckless

disregard—more than mere negligence or inadvertence—addresses Plaintiffs' apprehension that the

Act may apply to books whose covers are innocuous but whose contents, of which Plaintiffs may

be unaware, are harmful to minors. M.C.L. 722.675, .677, M.S.A. 25.254(5),(7). Assuming,

*arguendo*, that the terms "exhibit" and "show" do apply to content, the scienter element

---

[9] The court bases this finding on Defendants' counsel's adamant insistence at oral argument as an officer of
the court, which the court construes as a stipulation, that the Act does not contemplate regulating content. Also, in
the unlikely event that the Act is read to apply to content, the Act is readily susceptible to a narrowing construction
that the terms "put or set out," "exhibit" and "show" apply strictly to the covers or bindings, not to the contents of
such materials.

sufficiently narrows the Act's function in practice and mitigates any potential vagueness by specifying that complainants only are subject to criminal penalties if they knowingly or recklessly "exhibit" or "show" materials that are harmful to minors. M.C.L. 722.675, .677, M.S.A. 25.254(5),(7); *Hoffman Estates*, 455 U.S. at 495, n. 7, 102 S. Ct. at 1193, 71 L. Ed. 2d 362 ("the complainant must prove that the enactment is vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all'")(quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971)).

Because the import of these terms is readily ascertainable when read in context, Plaintiffs are provided with sufficient notice of what conduct is proscribed, these terms are not vague in that they do not offend basic notions of due process, and Defendants are entitled to summary judgment as to these terms' constitutionality.

2. "Allow to examine," M.C.L. 722.671(b); M.S.A. 25.254(1)(b).

The court finds that the phrase "allow to examine" also is adequately explained by, and should not be ripped from the context of, the alternate definitions listed in the statute of "to sell," "lend," "give," "exhibit" or "show." Plaintiffs claim that the State has failed to specify whether "allow" means "to let do or happen," as defined in *Webster's II New College Dictionary* (1999), or "to affirmatively grant permission." *New Oxford American Dictionary* (2001). To the extent that the meaning of the phrase "allow to examine" is unclear, the court finds the Virginia Supreme Court's construction instructive:

A violation must consist of proof beyond a reasonable doubt that the bookseller knowingly afforded juveniles an opportunity to peruse harmful materials in his store, or, being aware of facts sufficient to put a reasonable person on notice that such opportunity existed, took no reasonable steps to prevent the perusal of such materials by juveniles. *Commonwealth of Virginia v. American Booksellers Ass'n*, 236 Va. at 179.

Of course, the state would bear the burden of proving that a complainant acted with the requisite scienter. Plaintiffs urge that the very fact of being charged, as a seller of pornography to children, would be particularly devastating to a bookseller in the community. The court does not find this argument to be convincing. Even if eventually vindicated, any person or entity is injured by being charged or prosecuted. Thus, booksellers bear no greater burden than anyone else in this instance. Again, the combination of a clearly stated scienter requirement and an interpretation of similar provisions by another state's highest court render the challenged statute at issue here readily susceptible to a narrowing interpretation by Michigan's courts, if necessary. Thus, the court finds that the term "allow to examine" is not constitutionally troubling, and survives any allegations of vagueness.

3. "Only," M.C.L. 722.671(e)(i); M.S.A. 25.254(1)(e)(i).

It is clear from the plain language used in the statute that the term "only" specifies that the display of sexually explicitly matter is strictly limited to methods and spaces in which the bottom 2/3 of the cover is shielded from public view. Because Plaintiffs summarily assert that the term "only" is vague without providing any definitions by which that term can be ambiguously construed, the court finds that Plaintiffs have failed to meet their burden to set forth specific facts, not to rest on meager, unsupported allegations, and thus cannot withstand summary judgment on the construction of that term either. Fed. R. Civ. P. 56(c).

In sum, Plaintiffs have fallen far short of the standard required for a successful facial challenge: that no set of circumstances exist under which the Act could be valid. *U.S. v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987). The Act, 2003 Mich. Public Act 192, M.C.L. §§ 722.671 (a), (b) and (e), 722.675 and 722.677; M.S.A. §§ 25.254(1)(a),(b) and (e),(5), (7), is neither vague nor overbroad. As such, Defendants are entitled to summary judgment on the Act's constitutional validity.

## IV.

The court having heard oral argument, having reviewed the parties' briefs, and being otherwise fully advised in the premises; now, therefore,

IT IS ORDERED that Plaintiffs' motion for summary judgment be and hereby is DENIED. Defendants' motion for summary judgment, accordingly, is GRANTED.

**IT IS SO ORDERED.**

SEP 02 2004

Date: _____

Detroit, Michigan

ANNA DIGGS TAYLOR
_____
ANNA DIGGS TAYLOR
UNITED STATES DISTRICT JUDGE

**PURSUANT TO FRCivP COPIES
HAVE BEEN MAILED TO:**

Herschel Fink
Thomas Casey
Margaret Nelson

By: _____

A TRUE COPY
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BY _____
DEPUTY CLERK

21