LEXSEE 2004 US APP LEXIS 17805

**MUTUAL INSURANCE COMPANY OF AMERICA, et al., Plaintiffs-Appellees, v. ROYAL APPLIANCE MANUFACTURING COMPANY, Defendant-Appellants.**

No. 03-1269

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*112 Fed. Appx. 386; 2004 U.S. App. LEXIS 17805*

**August 17, 2004, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court. This notice is to be prominently displayed if this decision is reproduced.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

**DISPOSITION:** District court judgment vacated; remanded for further proceedings.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant vacuum cleaner manufacturer challenged a decision of the United States District Court for the Eastern District of Michigan, which awarded appellee insurers damages in the insurers' product liability action.

**OVERVIEW:** One of the manufacturer's vacuum cleaners caught on fire and caused damage to several businesses. The insurers, as subrogees, brought a product liability action, alleging that the vacuum was negligently designed because it did not have a thermal protective device on one of its electric motors. The manufacturer claimed that under *Mich. Comp. Laws § 600.2946(4)* there was a rebuttable presumption of no liability for manufacturers that complied with federal or state safety regulations. The district court refused to give such an instruction to the jury, relying on a recent state appellate court case that held that a similar statute violated the prohibition against delegating legislative authority under Mich. Const. art. IV, § 1. After the verdict, the state supreme court reversed the state appellate court decision. In reversing the district court's judgment in favor of the insurers, the court held that *Mich. Comp. Laws § 600.2946(4)* was not an unconstitutional delegation of legislative authority because the applicable safety regulations were promulgated independent of § 600.2946(4). The court held that the failure to give the jury instruction was not harmless error.

**OUTCOME:** The court reversed and remanded the district court's decision.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MUTUAL INSURANCE COMPANY OF AMERICA, a Michigan corporation, Subrogee of JSK Enterprises, Inc. dba, Golden Unicorn Gifts, Inc., Plaintiff - Appellee: Stephen D. Duggan, FTS 273-0901, Black & Duggan, Troy, MI.

For JSK ENTERPRISES, INC., a Michigan corporation, dba, Golden Unicorn Gifts, Inc., Plaintiff - Appellee: Stephen D. Duggan, FTS 273-0901, Black & Duggan, Troy, MI.

For CITIZENS INSURANCE COMPANY OF AMERICA, a Michigan corporation, Subrogee of American Realty Corporation, Plaintiff - Appellee: Stephen D. Duggan, FTS 273-0901, Black & Duggan, Troy, MI.

For AUTO OWNERS INSURANCE COMPANY, a Michigan corporation, Subrogee of Bastionelli Inc., dba, Havana Number Two, Plaintiff - Appellee: Stephen D. Duggan, FTS 273-0901, Black & Duggan, Troy, MI. [**2]

For AMERICAN STATES INSURANCE COMPANY, As Subrogee of the Nail Vanity Company aka, La Doice Vita, Plaintiff - Appellee: Stephen D. Duggan, FTS 273-0901, Black & Duggan, Troy, MI.

For ROYAL APPLIANCE MANUFACTURING COMPANY, INCORPORATED, Defendant - Appellant:

Eric L Zalud, 216-363-4500, Mariann E. Butch, FTS 363-4588, 216-363-4198, Benesch, Friedlander, Coplan & Aronoff Cleveland, OH

**JUDGES:** Before: SILER, DAUGHTREY and SUTTON, Circuit Judges.

**OPINIONBY:** SILER, DAUGHTREY, Sutton

**OPINION:**

[*387] SUTTON, Circuit Judge At issue is whether a recent Michigan Supreme Court decision requires us to vacate a $1.2 million judgment in favor of plaintiffs in this product-liability action arising from an allegedly defective vacuum cleaner. In 1995, the Michigan legislature enacted a law that creates a rebuttable presumption of no liability for injuries arising from products that comply with a state or federal safety standard. Prior to the trial in this case, a Michigan court of appeals invalidated a similar statute under the Michigan Constitution as an unconstitutional delegation of legislative power. Based on this decision, the district court refused to instruct the jury on the rebuttable presumption [**3] After the trial in this case, the Michigan Supreme Court reversed that decision and upheld the statute. [*388] In light of this development, we vacate the jury's $1.2 million verdict in favor of the plaintiffs and remand the action to the district court to consider whether plaintiffs' claims should go to a jury in light of the Michigan no-liability statute and, if so, to hold a jury trial on those claims with all necessary jury instructions

I

On November 5, 1999, while working at the Golden Unicorn gift shop, Samantha Cicero began vacuuming the carpet of the store with a model 89200 vacuum cleaner manufactured by Royal Appliance Manufacturing. Soon after she began cleaning the carpet, Cicero noticed white smoke coming from the vacuum cleaner. She turned off the machine, placed it in the store's backroom and returned to the front of the store to write a note to her supervisor about the incident. When smoke began to emerge from the store's backroom, she returned to the area and saw that the vacuum and surrounding area were in flames. She ran to an adjacent store to seek assistance — all to no avail, however, as the fire severely damaged the Golden Unicorn and several neighboring businesses. [**4]

After paying the insurance claims prompted by the property damage from the fire, the Mutual Insurance Company of America, along with other affected businesses (including the Golden Unicorn), filed this product liability action against Royal. They sought recovery under several state-law theories of relief: defective design, failure to warn, breach of implied warranty of merchantability and breach of express warranty. The plaintiffs filed the lawsuit in Michigan state court, after which Royal, an Ohio corporation, removed the case to federal court on diversity grounds because all of the plaintiffs were Michigan corporations that were seeking more than $75,000 in damages. 28 U.S.C. §§ 1332 & 1441

At trial plaintiffs attempted to show that Royal negligently designed the vacuum cleaner by failing to install a thermal protective device on one of the vacuum cleaner's electric motors. The plaintiffs' experts testified that debris became lodged inside the motor and prevented the motor from turning. The motor then overheated, first producing white smoke (as observed by Cicero) and ultimately a fire. Had Royal designed the vacuum cleaner properly by adding a thermal [**5] protective device, plaintiffs' experts claimed, the device would have broken the electric circuit and prevented the vacuum from overheating

During the trial, Royal presented the district court with Occupational Safety and Health Administration (OSHA) regulations adopting Underwriters Laboratories, Inc. (UL) "Standard for Safety for Vacuum Cleaners, Blower Cleaners, and Household Floor Finishing Machines, UL 1017." JA 587; 29 C.F.R. § 1910.7; 60 Fed. Reg. 33852, 33858 Royal argued that its vacuum cleaner complied with this OSHA standard and that Michigan law creates a rebuttable presumption of no liability for manufacturers that comply with federal or state safety regulations See Mich. Comp. Laws § 600.2946(4) The district court refused to give the instruction, relying on *Taylor v. Gate Pharms*, 248 Mich. App. 472, 639 N.W.2d 45, 54 (Mich. Ct. App. 2001), which held that a similar statute violated the Michigan Constitution's prohibition against delegating legislative authority.

The jury returned a verdict in favor of the plaintiffs on all of their claims and awarded them $1.2 million in damages. [**6] In doing so, the jury returned a special verdict form finding liability on all four of plaintiffs' theories of liability

[*389] II.

Royal initially challenges the verdict on the ground that, with respect to all four theories of liability, the jury should have been instructed that the company presumptively was not liable for the accident because its vacuum cleaner complied with an OSHA safety standard We give abuse-of-discretion review to a challenge to jury instructions, *King v. Ford Motor Co*, 209 F.3d 886, 897 (6th Cir. 2000), a standard that is met when a district court "relies on clearly erroneous findings of fact, applies an inappropriate legal standard, or improperly applies the law," *Chao v. Hosp. Staffing Servs, Inc*, 270 F.3d 374,

*381 (6th Cir. 2001).*

The Michigan legislature has established a rebuttable presumption of no liability in favor of manufacturers that make products in compliance with state or federal safety standards. The relevant statute says:

> In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the manufacturer or seller is [**7] not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm was in compliance with standards relevant to the event causing the death or injury set forth in a federal or state statute or was approved by, or was in compliance with regulations or standards relevant to the event causing the death or injury promulgated by, a federal or state agency responsible for reviewing the safety of the product.

*Mich. Comp. Laws § 600.2946(4).* A "product liability action," the statute adds, "means an action based on a legal or equitable theory of liability brought for damage to property caused by or resulting from the production of a product." *Id. § 600.2945(h).* And "production" in turn is defined to include "manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." *Id. § 600.2945(i).*

By its terms, the rebuttable-presumption statute appears to cover plaintiffs' four theories [**8] of liability: defective design, failure to warn, breach of implied warranty of merchantability and breach of express warranty. All four theories of liability are "legal or equitable theor[ies] of liability" that appear to fit within the broad definition of "product liability action" and that relate to the "production of a product." And all four theories of liability traditionally have been treated as product liability actions under Michigan law. *See id. § 600.2946(2)* (describing the requirements for proving a "product liability action ... for harm allegedly caused by a [design] defect"); *id. § 600.2948(3)* (describing the requirements for a "product liability action brought ... for harm allegedly caused by a failure to provide adequate warnings"); *In re Certified Questions from United States Court of Appeals for Sixth Circuit, 416 Mich. 558, 331 N.W.2d 456, 462 (Mich. 1982)* (holding that an earlier definition of "products liability action," which covered actions "based on *any* legal or equitable theory of liability," included an implied warranty theory). At all events, plaintiffs have not defended the verdict on the alternative ground that the Michigan statute does not apply to some or one of their theories [**9] of liability.

Under these circumstances, the question is not whether the Michigan rebuttable-presumption statute applies to these causes of action; it plainly does. The question is whether the statute amounts to an unconstitutional delegation of legislative [*390] authority under the Michigan Constitution, *Mich. Const. art. IV, § 1* ("The legislative power of the State of Michigan is vested in a senate and a house of representatives") and, if not, whether the OSHA standard is the kind of safety standard covered by the law. Like the meaning of the statute, the meaning of the Michigan Constitution is of course a question of Michigan law over which the Michigan Supreme Court has the final say.

When the trial in this case began, the only state authority that the district court had before it on this question was an intermediate appellate decision (*Taylor*) concluding that a related subsection of the statute — regarding an absolute defense for manufacturers of FDA-approved drugs — impermissibly delegated legislative authority. Relying on that decision, the district court declined to give the jury a rebuttable-presumption instruction under the statute.

After the trial, the Michigan Supreme [**10] Court reversed the court of appeals' decision in *Taylor. 468 Mich. 1, 658 N.W.2d 127 (Mich. 2003).* The Michigan Supreme Court held that the "independently significant standard" applied to the case and gave the following description of the doctrine: "A private entity's standards cannot be construed as a deliberate law-making act when their development of the standards is guided by objectives unrelated to the statute in which they function." *Id. at 133.* In other words, "there is no improper delegation where the agency or outside body making the finding ... is doing it for purposes independent of the particular statute." *Id.* Observing that "the FDA does not decide who may bring a products liability action in Michigan," but rather "for its own reasons that are independent of Michigan tort law, simply makes a factual finding regarding the safety and efficacy of drugs," the Michigan Supreme Court held that the defense available to manufacturers of FDA-approved drugs was not an unconstitutional delegation of legislative authority. *Id. at 134.* "In sum," the court concluded, "M.C.L. § 600.2946(5) delegates nothing to the FDA; rather, it uses independently significant [**11] decisions of the FDA as a measuring device to set the standard of care for manufacturers." *Id. at 137.*

The Michigan Supreme Court's reasoning in *Taylor* governs this case. Like the FDA, OSHA develops stan-

dards that have regulatory significance independent of their effect on Michigan tort law. Section 6(a) of the Williams-Steiger Occupational Safety and Health Act of 1970 requires the Secretary of Labor to promulgate occupational safety or health standards for the workplace. *Pub. L. No. 91-596, 84 Stat. 1590, 1593* ("The Secretary shall . . . by rule promulgate . . . occupational safety and health standard[s]."); *see also id.* at 1590 (Congress passed the Act "to assure the safe and healthful working conditions for working men and women; by authorizing enforcement of the standards developed under the Act."); *29 C.F.R. § 1910.1 (b)* ("This part carries out the directive to the Secretary of Labor under section 6(a) of the Act."). Because the OSHA regulations serve a purpose independent of Michigan tort law, the Michigan legislature's reliance on them does not run afoul of the Michigan Constitution's non-delegation doctrine as described in *Taylor* [**12]

In addition, to withstanding the plaintiffs' constitutional attack, Royal also has established that the OSHA safety standard is covered by the Michigan statute. The Michigan statute provides a rebuttable presumption of no liability if the allegedly defective product "was [1] in compliance with regulations or standards [2] relevant to the event causing the death [*391] or injury [3] promulgated by [] a federal or state agency responsible for reviewing the safety of the product." *Mich. Comp. Laws § 600.2946(4)*. All three requirements have been met.

First, the parties agree that Royal's vacuum "was in compliance with" the UL 1017 standard adopted by OSHA.

Second, UL 1017 is "relevant to the event causing death or injury" because the OSHA-adopted measure, "UL Standard for Safety for Vacuum Cleaners, Blower Cleaners, and Household Floor Finishing Machines, UL 1017," covers "household [and] commercial . . . vacuum cleaning machines . . . intended for indoor or outdoor use or both." JA 597. The OSHA measure also includes a section prescribing when an electric vacuum cleaner motor requires thermal protection. Because the standard covers vacuum cleaners in [**13] general and protective devices for electric motors inside vacuum cleaners in particular, the standard is "relevant to the event causing . . . injury."

Third, the standard was promulgated by "a federal or state agency responsible for reviewing the safety of the product." The Secretary of Labor has delegated authority to OSHA to promulgate rules and regulations to ensure workplace safety. *See Sec. of Labor Order No. 5-2002, 67 Fed. Reg. 65008*. Exercising that authority, OSHA has mandated that "electrical equipment shall be free from recognized hazards" and has established a number of factors used to determine the safety of electrical equipment. *29 C.F.R. § 1910.303(b)(1)*. Among them, OSHA has said that equipment should be suitable for its identified purpose, which according to *29 C.F.R. § 1910.303(b)(1)(i)*, "may be evidenced by listing or labeling." *See also Eyelematic Mfg. Co., No. 93-1664, 1992 OSAHRC LEXIS 219, at *21 (OSAHRC June 22, 1992)* (*29 C.F.R. § 1910.303(b)(1)(i)* is "a general standard which essentially provides that the UL listing for a particular piece of [**14] electrical equipment is one of the factors to consider when determining the safety of that equipment.") "Listing" or "labeling" involves inspection and approval by a "nationally recognized testing laboratory" using "appropriate test standards" approved by OSHA. *See 29 C.F.R. § 1910.399; id. 1910.7(b)(1)(i) & (c)*. Since 1988, OSHA has recognized UL as a "nationally recognized testing laboratory" and renewed UL's status in 1995 (*60 Fed. Reg. 33852, 33855*) and in 2002 (*67 Fed. Reg. 30966, 30968*). At the time it renewed UL's status in 1995, OSHA published a list of UL standards that OSHA "considered appropriate test standards under *29 C.F.R. 1910.7(c)*," *60 Fed. Reg. at 33855*, and listed UL 1017 as one of them, *id. at 33858*. Because Congress charged the Secretary of Labor with developing occupational health and safety standards, because the Secretary approved UL as a nationally recognized testing laboratory for establishing such standards for the workplace and because OSHA adopted UL 1017 as a safety standard for vacuum cleaners, "a federal or state agency responsible for reviewing the safety of the [**15] product," *Mich. Comp. Laws § 600.2946(4)*, established this standard.

In response, plaintiffs argue that OSHA did not "promulgate" UL 1017 because it relied on a non-federal agency to develop the standard. But the word "promulgate" does not require the agency itself initially to research and develop the standard any more than it requires the Secretary alone to research and develop the standard without the assistance of agency employees and other designees. Rather, "promulgate" simply means "to declare or announce publicly; to proclaim" or "to put (a law or decree) into force or effect," [*392] *Black's Law Dictionary* 1231 (7th ed. 1999), which is what OSHA did when it announced the renewal of UL as a "nationally recognized testing laboratory" and approved UL 1017 in the Federal Register as an appropriate OSHA standard.

Plaintiffs likewise err in arguing that the Michigan legislature impermissibly delegated authority for establishing tort liability standards to UL in violation of *Taylor*. As in *Taylor* itself, the legislature has looked to an independent agency (here OSHA, there the FDA) and concluded that the health and safety determinations of that agency [**16] deserve consideration in an action premised on the theory that a product is not healthy or safe. *Taylor*, moreover, was the harder case. There, FDA approval cre-

ated a *conclusive* presumption that the product was not unreasonably dangerous as long as the FDA approval was not obtained by fraud. Here, compliance with the OSHA regulations establishes a *rebuttable* presumption that the product is safe.

Nor, contrary to plaintiffs' suggestion, does it make a difference that OSHA may not have anticipated that its regulations could affect civil liability in a product-liability action under Michigan law. The issue here is the intent of the Michigan legislature, which was concerned only with whether the federal agency's regulation was "relevant to the event causing . . . injury." As shown, OSHA's promulgation of UL 1017 — a safety standard for vacuum cleaners — satisfies this modest requirement.

Plaintiffs, lastly, argue that the failure to give a rebuttable presumption instruction was harmless error because they produced adequate evidence to overcome the presumption — as shown by the jury verdict in their favor. But this Michigan law assuredly does not become irrelevant any time [**17] claimants can show that they have a triable issue of fact — in the absence of the statute — to present to the jury. The essential point of the legislation is to make it more difficult for claimants to prevail when they bring a product-liability action concerning a product that complies with pertinent federal or state safety standards. Except in a setting where the instruction did not apply to certain claims (which plaintiffs have not argued here), it is difficult to imagine how the failure to give this instruction would not require a new trial. The rebuttable presumption, indeed, goes not only to the jury's assessment of these claims but also to whether these claims should go to a jury in the first instance. *See Lavin v. Child Craft Indus.*, 2004 Mich. App. LEXIS 988, No. 245386, 2004 WL 840230, at *2 (Mich. Ct. App. Apr. 20, 2004) (recognizing the rebuttable presumption and rejecting plaintiff's argument that "defendant's crib design violated federal regulation, thereby creating an issue of fact regarding defendant's negligence") (footnote omitted); *Michal v. PDKLabs*, 2003 Mich. App. LEXIS 2357, No. 234943, 2003 WL 22160438, at *5 (Mich. Ct. App. Sept. 18, 2003) (summary judgment properly granted [**18] because plaintiffs failed to rebut the *Michigan Compiled Laws § 600.2946(4)* presumption by "presenting no evidence that [the product] was not in compliance with federal regulations"); *cf. Shanks v. Home Depot, Inc.*, 2001 U.S. Dist. LEXIS 22468, No. 1:00-CV-383, 2001 WL 1837829, at *2 (W.D. Mich. Dec. 7, 2001) (ruling on admissibility of expert testimony offered "to rebut [the *Michigan Compiled Laws § 600.2946(4)*] presumption by showing that . . . the industry safety standards are inadequate."). While the district court's failure to consider the statute's presumption of product safety was understandable in light of the intermediate court of appeals' decision in *Taylor*, it was not harmless.

III.

For these reasons, we vacate the district court's judgment and remand the case for [*393] further proceedings consistent with this opinion.