UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ENTERTAINMENT SOFTWARE
ASSOCIATION, VIDEO SOFTWARE
DEALERS ASSOCIATION, and MICHIGAN
RETAILERS ASSOCIATION,

            Plaintiffs,

vs.

JENNIFER M. GRANHOLM, in her official
capacity as Governor of the State of Michigan;
MICHAEL A. COX, in his official capacity as
Attorney General of the State of Michigan; and
KYM L. WORTHY in her official capacity as
Wayne County Prosecuting Attorney,

            Defendants.

Case No: 05-73634

Hon. George Caram Steeh

Magistrate Judge Steven D. Pepe

_____ /

BODMAN LLP
By:    Dennis J. Levasseur (P39778)
         Alicia J. Blumenfeld (P67511)
100 Renaissance Center, 34th Floor
Detroit, Michigan 48243
Telephone: (313) 259-7777
Facsimile: (313) 393-7579

        and

JENNER & BLOCK LLP
By:    Paul M. Smith
        Katherine A. Fallow
        Kathleen R. Hartnett
        Amy L. Tenney
601 Thirteenth Street, N.W., Suite 1200
Washington, DC 20005
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
By:    Denise C. Barton (P41535)
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-6434
Attorney for Defendants Governor
Jennifer A. Granholm and Attorney
General Michael A. Cox

_____ /

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS
GOVERNOR JENNIFER M. GRANHOLM
AND ATTORNEY GENERAL MICHAEL A. COX**

Plaintiffs Entertainment Software Association, Video Software Dealers Association, and Michigan Retailers Association, by and through their undersigned counsel, respond in opposition to the motion to dismiss of Governor Jennifer M. Granholm and Attorney General Michael A. Cox. In support, plaintiffs rely on the accompanying brief.

For the reasons stated in the accompanying brief, defendants' motion to dismiss should be denied. Plaintiffs do not object to the defendants' motion to dismiss Count V of the complaint, for the reasons stated in the brief.

          Respectfully submitted,

          BODMAN LLP


          By:   /s/ Alicia J. Blumenfeld
                 Dennis J. Levasseur (P39778)
                 Alicia J. Blumenfeld (P67511)
          100 Renaissance Center, 34th Floor
          Detroit, Michigan 48243
          Telephone: (313) 259-7777
          Facsimile: (313) 259-7579
          dlevasseur@bodmanllp.com
          ablumenfeld@bodmanllp.com

          and

          JENNER & BLOCK LLP
          By:   Paul M. Smith
                 Katherine A. Fallow
                 Kathleen R. Hartnett
                 Amy L. Tenney
          601 Thirteenth Street, N.W., Suite 1200
          Washington, DC 20005
          Telephone: (202) 639-6000
          Facsimile: (202) 639-6066

October 27, 2005

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ENTERTAINMENT SOFTWARE
ASSOCIATION, VIDEO SOFTWARE
DEALERS ASSOCIATION, and MICHIGAN
RETAILERS ASSOCIATION,

        Plaintiffs,

vs.

JENNIFER M. GRANHOLM, in her official
capacity as Governor of the State of Michigan;
MICHAEL A. COX, in his official capacity as
Attorney General of the State of Michigan; and
KYM L. WORTHY in her official capacity as
Wayne County Prosecuting Attorney,

        Defendants.

Case No: 05-73634

Hon. George Caram Steeh

Magistrate Judge Steven D. Pepe

_____/

BODMAN LLP
By:    Dennis J. Levasseur (P39778)
        Alicia J. Blumenfeld (P67511)
100 Renaissance Center, 34th Floor
Detroit, Michigan 48243
Telephone: (313) 259-7777
Facsimile: (313) 393-7579

        and

JENNER & BLOCK LLP
By:    Paul M. Smith
        Katherine A. Fallow
        Kathleen R. Hartnett
        Amy L. Tenney
601 Thirteenth Street, N.W., Suite 1200
Washington, DC 20005
Telephone: (202) 639-6000
Facsimile:  (202) 639-6066

MICHIGAN DEPARTMENT OF
ATTORNEY GENERAL
By:    Denise C. Barton (P41535)
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-6434
Attorney for Defendants Governor
Jennifer A. Granholm and Attorney
General Michael A. Cox

_____/

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO
DISMISS OF DEFENDANTS GOVERNOR JENNIFER M. GRANHOLM
<u>AND ATTORNEY GENERAL MICHAEL A. COX</u>**

Plaintiffs Entertainment Software Association ("ESA"), Video Software Dealers Association ("VSDA"), and Michigan Retailers Association ("MRA") submit this opposition to Defendants Governor Jennifer M. Granholm's and Attorney General Michael A. Cox's Motion to Dismiss.[1] Plaintiffs have filed an Amended Complaint and motion for preliminary injunction seeking to prevent Defendants and their officers, employees, and representatives from enforcing 2005 Public Act 108 (Mich. 2005) (hereinafter, the "Act"), due to take effect on December 1, 2005.

## INTRODUCTION

Defendants' motion to dismiss lacks merit and should be denied. Governor Granholm has repeatedly and publicly lobbied for passage and enforcement of the Act, while specifically disparaging the content of the message conveyed by video games regulated by the Act. Yet despite her initial zeal for the law, the Governor now seeks to avoid defending it in Court. And although acknowledging his general supervisory powers over the prosecution of the State's civil and criminal penalties, the Attorney General similarly seeks to distance himself from the Act.

That both the Attorney General and the Governor seek to avoid defending the patently unconstitutional Act and its enforcement is itself telling. What is dispositive here, however, is that both the Attorney General and the Governor possess the necessary connection to the enforcement of the Act to remain defendants in this case. Moreover, Defendants' argument that the Complaint against them should be dismissed because Plaintiffs have not yet been subject to injury ignores the fact that Plaintiffs are bringing a facial challenge to the Act under the First

---

[1] Defendants' Motion to Dismiss on Eleventh Amendment grounds applies only to the Governor and Attorney General. The jurisdictional basis for Plaintiffs' claims against Defendant Wayne County Prosecuting Attorney Kym L. Worthy is not in dispute. For purposes of this brief, unless otherwise noted, "Defendants" refers to the Governor and the Attorney General.

1

Amendment. Long-settled precedent allows individuals to challenge laws abridging First Amendment freedoms even before they are applied, because the very existence of such laws will result in self-censorship and the irreparable chilling of protected speech. Here, the Complaint alleges – and those allegations must be accepted as true for purposes of a motion to dismiss – that the Act imposes substantial content-based censorship of protected expression. Under these circumstances, and where state law authorizes both the Attorney General and the Governor to enforce the Act (and the Governor has taken affirmative steps to promise the Act's enforcement), the Complaint states a justiciable claim against both defendants.

Defendants' argument that Count IV of the Amended Complaint should be dismissed is based on a misunderstanding of the nature of Plaintiffs' legal claim. Plaintiffs allege in Count IV that the Act unconstitutionally violates due process and free speech rights by delegating authority to delineate between lawful and unlawful actions to a private entity that administers an otherwise voluntary rating system. Contrary to the Defendants' assertions, Count IV has nothing to do with any state law separation of powers issues. Because Count IV states a cognizable claim for relief, it should not be dismissed.

## BACKGROUND

Plaintiffs are associations of companies that create, publish, distribute, sell, and/or rent video games. Am. Compl. ¶¶ 9-11. If allowed to go into effect, the Act will result in censorship and limit the distribution of some of these creative works, based solely upon their expressive content. *Id.* ¶ 13. Plaintiffs bring this suit for declaratory and injunctive relief because the Act violates Plaintiffs' and their members' free speech, due process, and equal protection rights

under the First and Fourteenth Amendments. *Id.* ¶¶ 56-73. In this facial challenge, Plaintiffs also assert the rights of willing listeners. *Id.* ¶ 14.[2]

The Act makes it a state civil infraction for a person to "knowingly disseminate to a minor an ultra-violent explicit video game that is harmful to minors." Act, pt. II, § 17. A person who violates this provision is liable for a civil fine ranging from $5,000 to $40,000, depending on the number of violations. *Id.* The Act also provides misdemeanor criminal penalties of up to 93 days in prison, a fine of $25,000, or both, for store managers who permit a minor to "play or view the playing" of a prohibited video game. *Id.* § 20.

The Act contains a set of "good faith" affirmative defenses. Act, pt. II, §§ 23(1), (2). For example, certain individuals may assert an affirmative defense to liability under the Act by showing, *inter alia*, that they complied with "a rating system established by the pertinent entertainment industry." *Id.* Although not specifically noted in the Act, the phrase "rating system established by the pertinent entertainment industry" likely refers to the rating system established by the Entertainment Software Rating Board ("ESRB"), the voluntary rating system that has been almost universally adopted by retailers, manufacturers and distributors of video games in the United States. Am. Compl. ¶¶ 35-36.

## ARGUMENT

### I. THE GOVERNOR AND ATTORNEY GENERAL ARE PROPER DEFENDANTS.

Defendants argue that they are immune from suit under the Eleventh Amendment, despite *Ex parte Young*, 209 U.S. 123 (1908), which authorizes suits against state officers in their official capacities for prospective relief. *Ex parte Young* permits suit against a state official who

---

[2] Defendants' motion to dismiss does not address the substance of Plaintiffs' free speech claims, but the Plaintiffs are likely to prevail under controlling law. The merits of Plaintiffs' claims are explained in Plaintiffs' pending Motion for Preliminary Injunction and are not repeated here.

has "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. at 157 ("The fact that the state officer, by virtue of his office, has *some connection with the enforcement of the act*, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.") (emphasis added). In *Ex parte Young*, the Supreme Court determined that the Attorney General of Minnesota was not immune from suit under the Eleventh Amendment, because "the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional." *Id.* at 161.

Defendants argue that Plaintiffs' suit against them is improper because Plaintiffs have "failed to allege that the State Defendants have engaged in an unconstitutional act," State Mot. Dismiss at 4, and because they are not sufficiently connected to enforcement of the Act to justify being sued under *Young*. Those arguments are meritless. Plaintiffs and their members face an immediate risk of statewide enforcement of the Act and its unconstitutional restrictions on speech. Moreover, Plaintiffs' members and consumers will suffer cognizable First Amendment harm – self-censorship and chilling of speech – *whether or not* any prosecutions or enforcement actions are ever brought to enforce the Act. Under well-established Supreme Court precedent, Plaintiffs may bring a facial challenge to the Act prior to its actual enforcement. Moreover, because both the Attorney General and the Governor are charged with enforcing the laws of Michigan, including the Act, and because the Governor has demonstrated every intent of using that power to enforce the Act, both Defendants are properly before this Court.

4

### A. The Attorney General is a Proper Defendant.

The Attorney General has the power and duty to enforce the Act under Michigan law. *First*, he has the duty of supervising and advising prosecuting attorneys who will bring suit under the Act, and may intervene in any suit on behalf of the people of Michigan. M.C.L.A. § 14.30 ("The attorney general shall supervise the work of, consult and advise the prosecuting attorneys, in all matters pertaining to the duties of their offices. . . ."); M.C.L.A. § 14.28 ("[T]he attorney general . . . may, when in his own judgment the interests of the state require it, intervene in and appear for the people of this state in any other court or tribunal, in any cause or matter, civil or criminal, in which the people of this state may be a party or interested."). Thus, he will necessarily be involved in decisions to prosecute or defend the Act. *Second*, the Attorney General is obligated to defend the Act on any appeal to the state supreme court from any prosecutions under it. *Id.* § 14.28. And *third*, the Attorney General has the power to initiate a lawsuit himself if he determines it would be in the interests of the people of the State. *In re Certified Question from U.S. Dist. Ct. for Eastern Dist. of Michigan*, 638 N.W.2d 409, 413 (Mich. 2002). This latter power is grounded both in M.C.L.A. § 14.28 and the common law. *See Mundy v. McDonald*, 185 N.W. 877, 880 (Mich. 1921) (noting "broad discretion . . . vested in [the Attorney General] in determining what matters may, or may not, be of interest to the people generally"). Indeed, in *In re Certified Question*, the Michigan Supreme Court upheld a suit brought by Attorney General Granholm against tobacco companies seeking to redress alleged harm to the public health, noting "the Attorney General has the authority to bring actions involving matters of state interest, and the courts should accord substantial deference to the

5

Attorney General's decision that a matter constitutes a state interest." 638 N.W.2d at 415.[3] The Attorney General has of course not disclaimed his ability to enforce the Act directly, and the legislative findings assert that the Act was passed purportedly to protect "the public health." Act § 15.

Given the Attorney General's extensive connection to enforcement of the Act, there can be little doubt that he is properly sued under *Ex parte Young*. Indeed, Prosecuting Attorney Kym Worthy has agreed, noting in a letter to the Court that "the Attorney General of Michigan . . . is the legal officer primarily responsible for litigating the constitutionality of state statutes." Ex. D (October 3, 2005 letter from Worthy to Judge Steeh). And the Attorney General himself has filed a separate motion to change the venue to the Western District on the basis of the fact that "Michigan's Attorney General, whose office is located in Lansing, has the duty of supervising and advising all prosecuting attorneys." State Mot. Transfer Venue, at 6 (citing M.C.L.A. § 14.30). His argument that the Complaint should be dismissed against him should therefore be denied.

B. **The Governor is a Proper Defendant.**

The Governor has been an outspoken critic of the video game industry, and there is every reason to believe that she will use her position as Chief Executive of Michigan to enforce (and assist others in the enforcement of) the Act. For instance, the Governor has the responsibility to "take care that the laws be faithfully executed" as the head of the executive branch that is tasked

---

[3] *See also Michigan ex rel. Kelley v. C.R. Equipment Sales, Inc.*, 898 F. Supp. 509, 513 (W.D. Mich. 1995) (upholding antitrust prosecution brought by Attorney General on behalf of school districts and noting "Michigan's Attorney General has broad authority to prosecute actions when to do so is in the interest of the state."); *Humphrey v. Kleinhardt*, 157 F.R.D. 404, 405 (W.D. Mich. 1994) (noting that "the authority of the Attorney General of the State of Michigan is to be liberally construed, and his discretion in determining which matters are of appropriate concern should only be interfered with where his actions are found to be clearly inimicable to the people's interests").

with ensuring compliance with the Act. Mich. Const. art. V § 8. The Governor also possesses the power to bring legal proceedings directly, as she "may initiate court proceedings in the name of the state to enforce compliance with any . . . legislative mandate. . . ." *Id.* These powers provide the "some connection" to the Act's enforcement under Michigan law required by *Ex parte Young*. *See, e.g., Lawson v. Shelby County, Tennessee*, 211 F.3d 331, 335 (6th Cir. 2000) (holding that Tennessee governor may be sued under *Young* for alleged violation of right to vote); *Bradley v. Milliken*, 433 F.2d 897, 905 (6th Cir. 1970) (holding that Michigan governor and Attorney General may be sued under *Young* for alleged violation of Fourteenth Amendment in statute regulating school system).

The Governor's connection to the Act's enforcement is not merely theoretical. Rather, the Governor herself has championed this Act, specifically advocating the suppression of video game expression – the government action that is the core of Plaintiffs' challenge. *E.g.*, Press Release, Office of Governor Jennifer A. Granholm, *Granholm Announces Investigation Reveals Children Have Wide Access to Violent Video Games* (May 4, 2005) (stating that the Governor had "repeatedly called on the Legislature to act on [such] legislation," criticizing video games for their disfavored content, and urging the Michigan Legislature that "[w]e must act now.") (State Opp. Mot. Prelim. Inj. Ex. 10-HHH); Press Release, Office of Governor Jennifer A. Granholm, *Granholm Signs Final Bills Protecting Children from Violent and Sexually-Explicit Video Games,* (Sept. 14, 2005) ("I am proud to sign legislation that will protect children from this kind of content."). By word and deed, the Governor clearly intends that the Act be enforced and that her powers be used to that end. The Governor's plenary authority to enforce the laws of Michigan, combined with her vigorous efforts to enact and enforce the Act, show that she has sufficient connection to the challenged law to be properly named as a party. *See Allied Artists*

*Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982) (upholding suit against Ohio Governor under *Ex parte Young*).

### C. Defendants' Arguments That They Have Committed No "Acts" to Justify Naming Them As Defendants Are Meritless.

The Governor and Attorney General argue that they are not properly named defendants because they have committed no "acts" that sufficiently link them to enforcement of the Act. State Mot. Dismiss at 4. This argument is based on a flawed premise in the present First Amendment context. Plaintiffs are not required to prove imminent enforcement of the Act – such as a pending or imminent prosecution – because the existence of the Act itself poses a harm to free speech interests protected under the First Amendment. In the First Amendment context, the danger of a statute that threatens legal sanctions for certain expressive content "is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). Thus, "[p]arties not yet affected by the actual enforcement of the statute are allowed to challenge actions under the First Amendment in order to ensure that an overbroad statute does not act to 'chill the exercise of free speech and expression.'" *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 285 (6th Cir. 1997) (quoting *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995)); *see Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). The effect of the Act's restrictions will be to chill Plaintiffs' members' speech through threat of prosecution and resulting self-censorship – the very sort of tangible harm that, in the First Amendment context, creates a proper basis for suit. Am. Compl. ¶¶ 13, 59.

Defendants' argument, on the other hand, would deny any plaintiff bringing a First Amendment challenge a right to seek prospective relief against any state official, requiring instead the plaintiff to first be exposed to prosecution. The Supreme Court, however, has held in

8

the First Amendment context that a plaintiff may bring suit against state officials to vindicate free speech interests without running afoul of the federalism concerns underlying *Young*. *Dombrowski v. Pfister*, 380 U.S. 479, 483-87 (1965). Indeed, this Court has adjudicated First Amendment challenges to different portions of the *same Michigan statute* that the Act amends against both Governor and the Attorney General. *See Cyberspace Communications, Inc. v. Engler*, 142 F. Supp. 2d 827, 828 (E.D. Mich. 2001) (enjoining, on First Amendment grounds, Governor and Attorney General from enforcing portion of statute regarding distribution of sexually explicit materials to minors); *Athenaco, Ltd. v. Cox*, 335 F. Supp. 2d 773, 782-83 (E.D. Mich. 2004) (adjudicating First Amendment challenge to another portion of statute regarding display of sexually explicit materials to minors against Attorney General Cox).

For these reasons, the case on which Defendants primarily rely, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996), is inapposite here. The plaintiffs in that case challenged the constitutionality of certain *exceptions* to a law that established a duty to provide adequate care for children under a person's care and authorized prosecution for failure to provide that care. *Id.* at 1413. Thus, the Court of Appeals concluded, "[w]hat we have here is not action, but inaction, and *Young* does not apply." *Id.* at 1416; *id.* (noting that plaintiffs in that case were essentially seeking "that the federal courts *permit* a broader enforcement of certain statutes by striking down those provisions of the statutes which prevent their enforcement with respect to [certain] persons. . . .").[4] Here, by contrast, settled Supreme Court precedent

---

[4] In arguing that they are not proper defendants, the Governor and the Attorney General isolate the quote from *Children's Healthcare* that "'[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law,'" State Mot. Dismiss at 4 (quoting 92 F.3d at 1416). That statement, however, was made in the context of the court's discussion of the requirement that plaintiffs challenge a state "action," rather than "inaction." Moreover, here Plaintiffs rest not on theoretical "general authority" but specific duties under State law.

9

establishes that Plaintiffs will suffer a violation of their First Amendment rights by the mere existence of the Act, whether or not they are ever prosecuted, and thus Plaintiffs are authorized to bring a pre-enforcement suit. Further, unlike *Children's Healthcare*, the Governor and Attorney General here *are* empowered to enforce the Act's provisions against Plaintiffs.

In fact, the Sixth Circuit has upheld constitutional challenges against state officials in analogous situations. In *McNeilus Truck & Manufacturing, Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 437 (6th Cir. 2000) the court held that the Commissioner of the Ohio Bureau of Motor Vehicles and the Attorney General were properly sued in a challenge to constitutionality of vehicle licensing requirements, because the Bureau "threatened" to withdraw Plaintiff's license, and "the Attorney General helps enforce the noncriminal portions of the statute." And in *Zielasko v. Ohio*, 873 F.2d 957, 959 (6th Cir. 1989), the Sixth Circuit upheld an equal protection challenge to a portion of Ohio Constitution against state defendants on the theory that the Plaintiff would have taken a specific action but for "threat of criminal penalty" for taking such action. As in those cases, Plaintiffs have alleged an actual harm arising out of the threat of enforcement of the Act. Accordingly, Defendants' argument that they should be dismissed as immune under the Eleventh Amendment should be rejected.

**II.     COUNT IV PROPERLY ALLEGES VIOLATIONS OF DUE PROCESS AND SHOULD NOT BE DISMISSED.**

Defendants' argument that the Court should either dismiss or abstain from considering Count IV of the Amended Complaint is based on a misunderstanding of the claim, and must be rejected. Count IV of the Complaint alleges that by effectively delegating the ability to delineate the line between legal and illegal conduct to the ESRB – a private body that does not operate pursuant to any legislated or permanent standards – the Act violates due process, and the First and Fourteenth Amendments of the United States Constitution. Amended Compl. ¶¶ 71-73.

Count IV therefore involves a question of federal law, and Defendants' abstention arguments are inapposite. *See* State Mem. at 5-6.

The Act violates the First and Fourteenth Amendments by establishing affirmative defenses to certain potential violations that turn on whether a person selling a video game "complies" with an industry rating system, Act, pt II, § 23(1)(c), or whether a business "enforces" a policy requiring its employees to "comply" with the rating system. *Id.* §§ 23(2)(a), (c). Thus, under some circumstances, a person may or may not be held liable depending on whether a minor is sold a game that *the ESRB* has determined is "suitable" for the minors of the same age. As the Complaint explains, the Act violates due process "[b]y delegating the power to determine what video games are subject to the law's restrictions to a private organization, and without any accompanying legislative standards." Am. Compl. ¶ 72.

Plaintiffs' due process claim draws on two lines of well-settled Supreme Court precedent. First, because the Act uses voluntary industry rating systems like the ESRB system as a basis for delineating whether the sale of video games is consistent with state law, and because the ESRB process occurs absent any judicial supervision or protection, the statute violates procedural due process, as well as the procedural protections against prior restraints articulated in *Freedman v. Maryland*, 380 U.S. 51, 58-59 (1965); *see, e.g., Engdahl v. City of Kenosha*, 317 F. Supp. 1133, 1135 (E.D. Wis. 1970) (rejecting a statute incorporating the private Motion Picture Association of America ("MPAA") ratings as a prior restraint); *see also Swope v. Lubbers*, 560 F. Supp. 1328, 1334 (W.D. Mich. 1983) (striking down state college's ban on showing movies rated "X" by MPAA as unconstitutional prior restraint). In *Freedman* and similar cases, the Supreme Court has made clear that when the government is in the business of restricting content based on a rating process, the government bears the burden of establishing that the content is unprotected

expression and the rating must be subject to prompt judicial review. *See Freedman*, 380 U.S. at 58-59. Because the ESRB is a private, voluntary rating system, and thus does not operate pursuant to such judicial supervision, the Act's incorporation of the rating system fails to satisfy constitutional standards.

Second, because the ESRB's dynamic standards – although sufficiently clear for a private, voluntary rating system – are not designed or intended for use as a bright-line delineation between legal and illegal content, the Act fails due process under *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676 (1968), and related caselaw. In *Interstate Circuit*, the Supreme Court struck down for vagueness a city-run film board's standards for ultimately determining whether material was "suitable" or "not suitable" for children. *Id.* at 681-82. Courts have relied upon *Interstate Circuit* to strike down enactments that would restrict content based on the private MPAA rating system. *See, e.g., Motion Picture Association of America v. Specter*, 315 F. Supp. 824, 826 (E.D. Pa. 1970) (rejecting a law incorporating the MPAA ratings); *Swope*, 560 F. Supp. at 1334 ("[I]t is well-established that the Motion Picture ratings may not be used as a standard for a determination of constitutional status."). The Act would similarly – and impermissibly – rely upon the private, voluntary, and continually evolving ESRB system as a basis for proscribing speech.

In arguing that Count IV should be dismissed, Defendants rely on several cases that are inapplicable here. *Mutual Insurance Co. of America v. Royal Appliance Manufacturing Co.*, No. 03-1269, 112 Fed. Appx. 386 (6th Cir. 2004) (unpublished decision) concerned a challenge to a statute based on the theory that the statute constituted an unconstitutional delegation of legislative authority "under the Michigan Constitution." *Id.* at 390. As explained above, Claim IV here is based on violations of due process under the United States Constitution, not the

Michigan Constitution. Further, *Currin v. Wallace*, 306 U.S. 1 (1939) involved a challenge to a statute under separation-of-powers doctrine, not due process, and involved neither delegation of standards to a third party nor any speech interests protected under the First Amendment. Finally, *People v. Luera*, 86 Cal. App. 4th 513 (2d Dist. 2001), the only case cited involving private industry standards, is inapposite as well. *Luera* was decided on state constitutional and separation of powers grounds, and the Court in *Luera* did not consider the claims under the First and Fourteenth Amendments asserted here. *See id.* at 519. Moreover, the challenged statute in that case provided a defense based merely on whether a film had ever been rated by the MPAA – a bright-line factual question. The statute did not, as here, determine whether conduct was illegal based on case-by-case compliance with various unreviewable and subjective ratings assigned by a third party.

For these reasons, Count IV states a cognizable claim against Defendants and should not be dismissed.

### III. PLAINTIFFS DO NOT OBJECT TO THE DISMISSAL OF COUNT V OF THEIR COMPLAINT BECAUSE IT IS CLEAR THAT THEIR CONSTITUTIONAL CLAIMS IN COUNTS I THROUGH IV ARE MADE PURSUANT TO § 1983.

Plaintiffs do not object to the dismissal of Count V, which alleges a violation of 42 U.S.C. § 1983, because it is otherwise clear that Plaintiffs' constitutional claims in Counts I through IV are brought pursuant to the right of action created in § 1983. *See* Am. Compl. ¶ 1 ("Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 . . . ."); *id.* ¶¶ 6-7 (stating same); ¶¶ 56, 61, 67, 71 (incorporation all prior allegations into Counts I through IV). Plaintiffs are not abandoning their §1983 claims, and in fact plainly satisfy the requirement of alleging a specific constitutional violation and injury in Counts I to IV. *Day v. Wayne County Board of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) is certainly not to the contrary. In that case, the court held

that the plaintiff *had* stated a cause of action under § 1983, but held that the claim was barred by a duplicative Title VII claim, a situation not present here.

Plaintiffs included a separate § 1983 count primarily to highlight their reliance on that statute, which in turn creates a potential entitlement to attorneys' fees under 42 U.S.C. § 1988. *See* Amended Compl. ¶¶ 74-76. Yet because dismissal of Count V would have no legal consequence, Plaintiffs do not object to the dismissal of that Count.

## CONCLUSION

For these reasons, the Defendants' Motion to Dismiss should be denied. Because it is otherwise clear that Plaintiffs' constitutional claims in Counts I through IV are brought pursuant to 42 U.S.C. § 1983, Plaintiffs do not object to the Defendants' motion to dismiss Count V of the Complaint.

                    Respectfully submitted,

                    BODMAN LLP


                    By:   /s/ Alicia J. Blumenfeld
                           Dennis J. Levasseur (P39778)
                           Alicia J. Blumenfeld (P67511)
                    100 Renaissance Center, 34th Floor
                    Detroit, Michigan 48243
                    Telephone:  (313) 259-7777
                    Facsimile:  (313) 259-7579
                    dlevasseur@bodmanllp.com
                    ablumenfeld@bodmanllp.com

                    and

                    JENNER & BLOCK LLP
                    By:   Paul M. Smith
                           Katherine A. Fallow
                           Kathleen R. Hartnett
                           Amy L. Tenney
                    601 Thirteenth Street, N.W., Suite 1200
                    Washington, DC 20005
                    Telephone: (202) 639-6000
                    Facsimile:  (202) 639-6066

October 27, 2005

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ENTERTAINMENT SOFTWARE
ASSOCIATION, VIDEO SOFTWARE
DEALERS ASSOCIATION, and MICHIGAN
RETAILERS ASSOCIATION,

        Plaintiffs,

vs.

JENNIFER M. GRANHOLM, in her official
capacity as Governor of the State of Michigan;
MICHAEL A. COX, in his official capacity as
Attorney General of the State of Michigan; and
KYM L. WORTHY in her official capacity as
Wayne County Prosecuting Attorney,

        Defendants.       /

Case No: 05-73634

Hon. George Caram Steeh

Magistrate Judge Steven D. Pepe

## PROOF OF SERVICE

    Alicia J. Blumenfeld certifies that she is an employee of Bodman LLP, that on October 27, 2005 she caused to be served a copy of **plaintiffs' opposition to motion to dismiss of defendants Governor Jennifer M. Granholm and Attorney General Michael A. Cox** and this Proof of Service upon the person(s) listed below via electronic filing:

Denise C. Barton, Esq.
Jason R. Evans, Esq.
Assistant Attorney General
Department of Attorney General
525 W. Ottawa Street, Floor 5
P.O. Box 30736
Lansing, Michigan 48909

    I declare under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge and belief.

                                      /s/ Alicia J. Blumenfeld
                                      Alicia J. Blumenfeld