**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ENTERTAINMENT SOFTWARE
ASSOCIATION, VIDEO SOFTWARE
DEALERS ASSOCIATION, and MICHIGAN     No. 05-73634
RETAILERS ASSOCIATION ,

           Plaintiffs,     HON. GEORGE CARAM STEEH
                                      MAGISTRATE JUDGE PEPE
v

JENNIFER GRANHOLM, in her official
capacity as Governor of the State of Michigan;
MICHAEL A. COX, in his official capacity as
Attorney General for the State of Michigan, et
al, and KYM L. WORTHY, in her official
capacity as Wayne County Prosecuting
Attorney,

           Defendants.

---

Dennis J. Levasseur (P39778)              Paul M. Smith
Alicia J. Blumenfeld (P67511)             Katherine A. Fallow
Bodman LLP                                Kathleen R. Hartnett
                                          Amy L. Tenney
                                          Jenner & Block LLP

---

Denise C. Barton (P41535)
Jason R. Evans (P61567)
Ann Sherman (P67762)
Attorneys for Defendants
Michigan Department of Attorney General
Public Employment, Elections & Tort Div.

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

### INTRODUCTION

In federal civil rights actions, "the court, in its discretion, may allow the prevailing party,

other than the United States, a reasonable attorney's fee as part of the costs."[1]  Section 1988 only

---

[1] 42 USC 1988.

Dockets.Justia.com

allows a prevailing party to recover its *reasonable* attorneys' fees.[2]  Further, §1988 "only

guarantees Plaintiffs competent counsel, not the best and/or most expensive counsel."[3]  A

reasonable attorneys' fee award is one that is adequate to attract competent counsel but does not

produce windfalls to attorneys.[4]  Plaintiffs have the burden of establishing that the fees they seek

are reasonable under 42 USC § 1988.  While Plaintiffs were the prevailing party in this action,

their request for attorneys' fees is excessive.

Although Plaintiffs claim that they "leanly" staffed this case, they utilized nine (9)

attorneys and five (5) non-attorney staff for this case.  Plaintiffs' staffing of this case was

unwarranted considering that the court ruled on this case prior to any discovery or an evidentiary

hearing.  Further, much of Plaintiffs' counsels' work in this case mirrored work that was done in

similar litigation in other venues.  By Plaintiffs' own admission, their out-of-town attorneys have

already litigated almost identical issues in other States, most recently in California and Illinois.

(Motion, p 5.)  Compounding the Plaintiffs' excessive request is the fact that Plaintiffs' out-of-

town attorneys billed at a rate far exceeding the rate for competent and experienced attorneys in

the Detroit market.  Given these considerations, Plaintiffs' attorneys' fees are excessive and

should be adjusted accordingly.

**ARGUMENT**

I.      **THE CLAIMED HOURS EXPENDED ON THIS CASE BY PLAINTIFFS'
        COUNSEL ARE UNREASONABLE BECAUSE OF DUPLICATION OF WORK,
        INADEQUATE BILLING, AND BECAUSE THIS CASE WAS
        STRAIGHTFORWARD, INVOLVED NO DISCOVERY, NO EXPERTS, NO
        EVIDENTIARY HEARING, AND WAS SUBSTANTIALLY SIMILAR TO
        LITIGATION OCCURRING IN OTHER VENUES.**

---

[2] *Gratz v Bollinger,* 353 F Supp 2d 929, 937 (ED MI, 2005).
[3] *Gratz,* 353 F Supp 2d at 948.
[4] *Blum v Stenson*, 465 US 886, 893, 897; 104 S Ct 1541; 79 L Ed 2d 891 (1984).

The starting point for calculating a reasonable attorneys' fee award under 42 USC 1988 "should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his or her court-ascertained reasonable hourly rate."[5]

The benchmark for determining the reasonableness of the hours expended on litigation is the concept of billing judgment.[6]  As the United States Supreme Court emphasized in *Hensley v Eckerhart*, the exercise of this judgment includes "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."[7]  *Hensley* requires a fee applicant to exercise "'billing judgment' not because he should necessarily be compensated for less than the actual number of hours spent litigating a case, but because the hours he does seek compensation for must be reasonable."[8]

**A.      Plaintiffs' attorneys' fees request should be reduced due to duplication of efforts**

The Supreme Court has instructed district courts to exclude fees that were not "reasonably expended," such as fees due to overstaffing or redundancy of work.[9]  As the Sixth Circuit Court of Appeals stated in *Coulter v Tennessee,* "[w]here duplication of effort is a serious problem, as in this case, the District Court may have to make across the board reductions by reducing certain items by a percentage figure."[10]

---

[5] *Gratz,* 353 F Supp 2d at 948 (citing *Adcock-Ladd v Sec'y of Treasury*, 227 F3d 343, 349 (6th Cir, 2000)).
[6] *Ford Motor Co v Lloyd Design Corp*, __F3d __, 2002 US Dist LEXIS 17024, at *4 (ED MI, 2002) (citing *Hensley v Eckerhart*, 461 US 424, 433; 103 S Ct 1933; 76 L Ed 2d 40 (1983)).
[7] *Hensley*, 461 US at 433.
[8] *Riverside v Rivera*, 477 US 561, 570; 106 S Ct 2686; 91 L Ed 2d 466 (1986).
[9] *Gratz,* 353 F Supp 2d at 937 (citing *Hensley*, 416 US at 434).
[10] *Coulter v Tennessee,* 805 F2d 146, 152 (6th Cir 1986) (court made a 50% reduction due to duplith Cirtion of effort).

The hours for which Plaintiffs' seek compensation are unreasonable due to duplication of effort. Plaintiffs' out-of-state counsel—and primary counsel—Jenner & Block LLP (Jenner & Block) staffed this case with six (6) attorneys and five (5) non-attorney staff. Plaintiff's local counsel—Bodman LLP (Bodman) —staffed this case with an additional three (3) attorneys.

In *Gratz v Bollinger*—a case involving a challenge to the application process to the University of Michigan's College of Literature, Science and the Arts—this Court warned against billing for tasks only made necessary because of the large number of staff involved in the litigation.[11] As examples of duplicated efforts, the *Gratz* Court pointed to billing "entries relate[d] to telephone conferences and meetings between the attorneys and to preparation of notes, e-mails, and memoranda for the sole purpose of keeping Plaintiffs' other attorneys apprised of progress in the case."[12] The Court went on to state "[w]hile there is nothing inherently unreasonable about making an award for time spent by two or more lawyers engaged in the same representation, counsel bears the burden of showing his or her specific contribution."[13]

A review of the bills submitted by Jenner & Block makes clear that a substantial amount of work performed by this firm was duplicative. Although Jenner & Block's vague and "block" billing—an issue that will be addressed later in this brief—makes it is difficult to determine how much time was spent on each discrete task, many of the entries include time billed for telephone conferences, meetings, and e-mails between the staff working on the case. Defendants provide the following as a non-exhaustive list of examples from Attachment A to the Declaration of Katherine A. Fallow:

---

[11] *Gratz,* 353 F Supp 2d at 942.
[12] *Gratz,* 353 F Supp 2d at 942.
[13] *Gratz,* 353 F Supp 2d at 942.

1. 8/25/05 KAF billed 1 hour for "Reviewed Michigan Law; conferred with S. Jefferson re same; conferred with P. Smith re challenge to MI law."

2. 8/26/05 KAF billed 1 hour for "Reviewed Michigan Law; conferred with P. Smith re same; reviewed MI 'harmful to minors' law; drafted email to G. Markels outlining litigation strategy for MI."

3. 8/27/05 KRH billed 3 hours for "...drafted email to K. Fallow re applicability of E.D. Michigan opinion _____ and other legal issues raised by Michigan bill; corresponded with P. Smith and K. Fallow re substance and logistics of challenge to Michigan law."

4. 9/7/05 ALT billed 2.5 hours for "Communications with P. Smith and K. Hartnett re strategy for Michigan litigation...conference call with G. Markels and P. Smith re strategy for Michigan litigation."

5. 9/9/05 ALT billed 7.25 hours for "...multiple communications with K. Hartnett and P. Smith re status of legislation and litigation strategy."

6. 9/10/05 ALT billed 7.5 hours for "Communications with K. Hartnett re drafting complaint; drafted complaint for Michigan; communications with team re same."

7. 9/13/05 ALT billed 6.75 hours for "Drafted and edited complaint; drafted and edited memorandum in support of preliminary injunction; multiple conferences with team re same."

8. 9/15/05 KAF billed 4 hours for "Met with P. Smith re status of case; reviewed draft of complaint and edited same; ...conferred with A. Tenney re case status and draft complaint, draft PI motion, and supporting documents."

9. 9/15/05 ALT billed 9.25 hours for "...conferred with K. Fallow, P. Smith, and K. Hartnett re litigations strategy; telephone conferences with local counsel re litigation plan."

10. 9/22/05 KAF billed 5.25 hours for "Revised draft motion for PI; ...conferred with P. Smith re same..."

These are but a few examples of billing—taken from the first few pages of Jenner & Block's billing—made necessary because of the large number of staff involved in the litigation. Not only are many entries related to telephone conferences and meetings between the attorneys and to preparation of notes, e-mails, and memoranda for the sole purpose of keeping Plaintiffs' other attorneys apprised of progress in the case, but much of the work relates to revisions and review of work done by other attorneys and staff. As was done in *Gratz*, due to the large number of

such billing entries, this court should reduce Jenner & Block's hours by an across-the-board

reduction of at least 5% for such duplicative services.[14]

Likewise, much of the work performed by Bodman attorneys was duplicative. In dealing

with the work performed by secondary counsel, the *Gratz* Court stated that it saw no reason why

the secondary firm's attorneys "expended countless hours reviewing Maslon's (lead firm) work,

reviewing documents submitted in the litigation that a Maslon attorney also reviewed and billed,

and discussing the course of litigation with the Maslon attorneys."[15]  Similarly, in this case,

much of Bodman's billing involves reviewing documents already reviewed and billed by Jenner

& Block attorneys, and discussing the course of litigation with Jenner & Block attorneys.

Bodman also spent a substantial amount of time involved in inter-office discussions and review

of work done by other attorneys within the firm.  The following is a non-exhaustive list of

examples from Exhibit A of Dennis J. Levasseur's Affidavit:

> 1.  9/1/4/05 DJL billed 8 hours for "Telephone discussions with Mr. Smith re status; review draft of complaint...; various telephone discussions with Ms. Tenney re filing and related issues;...various emails to Ms. Tenney.
>
> 2.  9/15/05 AJB2 billed 1.5 hours for "Review of Complaint."
>
> 3.  9/19/05 DJL billed 2 hours for "...telephone discussions with Ms. Tenney; discussion with Ms. Blumenfeld re filing of complaint; discussion with Mr. Smith."

Again, these are but a few examples of duplicative billing.  In *Gratz*, the Court reduced the

secondary firm's hours by 10% due to similar duplicative efforts.[16]  This Court should similarly

reduce Bodman's billing by an across-the-board reduction of at least 10%.

---

[14] *Gratz,* 353 F Supp 2d at 942.
[15] *Gratz,* 353 F Supp 2d at 943.
[16] *Gratz,* 353 F Supp 2d at 943.

**B.    Vague Billing Entries and "Block billing"**

Both Jenner & Block's and Bodman's billing contain vague billing entries and "block

billing" entries.  Three vague billing entries can be seen on the first page of Jenner & Block's

billing sheets:

1.  9/7/05 PMS billed 1.5 hours for "Prepared for Michigan case."

2.  9/8/05 PMS billed 1 hour for "Prepared for Michigan case."

3.  9/9/05 PMS billed 1 hour for "Preparation for Michigan case." [Fallow Decl., Attachment A].

Likewise, Jenner & Block's billing contains many examples of "block billing."  Some of

these examples include:

1.  9/19/09 KAF billed 9 hours for "Reviewed and revised draft declaration for D. Lowenstein; telephone conference with S. Jefferson re same; reviewed comments on draft complaint and conferred with A. Tenney re same; conferred with A. Tenney re corporate disclosure requirement; telephone conference with T. Price re declaration; conferred with A. Tenney re draft complaint and edits thereto; reviewed and revised PI motion and memorandum of law; conferred with P. Smith re corporate disclosure statement; reviewed and revised draft complaint in light of _____; revised D. Lowenstein draft declaration in light of comments from D. Buyer and S. Jefferson; reviewed legal research of 6th Circuit law; reviewed and revised draft complaint and emailed revised version to G. Markels and D. Buyer."

2.  9/20/05 KAF billed 5.25 hours for "Emailed outline of changes to complaint to G. Markels, D. Buyer; reviewed and revised draft complaint; reviewed emails from G. Markels re draft complaint; responded to G. Markels re changes to draft complaint; reviewed edits from D. Buyer and responded re same; reviewed revised complaint; conferred with A. Tenney re filing of complaint; conferred with P. Smith re legal theories; reviewed cases for same; telephone conference with P. Vance, D. Buyer re deposition; conferred with P. Smith re same; reviewed and revised Michigan complaint; emailed revised version to G. Markels, D. Buyer. [Fallow Decl., Attachment A].

Some examples of vague and "block billing" contained in Bodman's billing statements are as

follows:

1.  10/17/05 AJB2 billed 2.25 hours for Review of denial of defendants' motion for leave to file exhibits in the traditional manners; review of motions filed by defendants (motion to dismiss, motion to change venue, response to plaintiffs' motion for preliminary

7

injunction); review of appendix filed by defendants; exchange of emails to Mr. Smith, Ms. Fallow, Ms. Tenney and Mr. Levassuer re motions.

2.  10/17/05 DJL billed 4.5 hours for Email correspondence with Ms. Tenney re state filing, email correspondence with Mr. Smith and Ms. Tenney re a variety of issues such as Western District judges; discussion with Judge McKeague's chambers re Lansing staffing of same; various discussions with Ms. Barton re filing state's brief and latest set of history; letters to Ms. Barton re same; attention by Mr. Levasseur to review of state's brief in opposition to motion; continued review of state's motions to dismiss for lack of jurisdiction and for change of venue. [Levasseur Affidavit, Exhibit A.]

Inadequate documentation resulting from vague and block billing "makes it impossible for the court to verify the reasonableness of the billing, either as to the necessity of the particular service or the amount of time expended on a given task."[17]  Based on similar vague and block billing as is present in this case, the *Gratz* Court made a 10% reduction in the fees requested.  As both Jenner & Block's and Bodman's billings are replete with vague and block billing, this Court should also reduce their hours request by an across-the-board reduction of at least 10%.

Further, Defendants should not be required to pay the $600 "one time" admission fee required for Jenner & Block's attorneys to be admitted to practice in this Court when Plaintiffs have also retained local counsel.

**C.    Fees Related to Travel Should Be Reduced.**

As the Court pointed out in *Gratz*, "some courts completely disallow compensation for an attorney's travel time."[18]  The *Gratz* Court went on to state that it believed that it was equitable for Plaintiffs to be reimbursed for their out-of-state attorneys' travel time, but at 50% of their reasonable hourly rate.  Defendants ask that this Court make a similar reduction in the fees charged by Plaintiffs' counsel for travel time.  As was stated by the *Gratz* Court, Defendants

---

[17] *Gratz,* 353 F Supp 2d at 939 (citing *In re Pierce*, 890 F2d 451, 455 (DC Cir, 1989)).
[18] *Gratz,* 353 F Supp 2d at 943.

should not "bear the additional costs incurred because [Plaintiffs' firms] are located in different

and distant cities."[19]

**D.      Plaintiffs' fee request is excessive given the length and complexity of this case and the substantial duplication in research, arguments presented, and written briefs between the Illinois and Michigan cases.**

This Court decided this case prior to interrogatories, depositions, or any other discovery

being issued.  Neither Plaintiffs nor Defendants hired expert witnesses in this case, nor was an

evidentiary hearing held.  Rather, the case dealt almost exclusively with First Amendment law,

an area in which Plaintiffs' out-of-town firm, Jenner & Block, claims to have substantial

expertise.

In addition to its considerable First Amendment experience, Jenner & Block has

experience in the very First Amendment issues presented in this case.  By Plaintiffs' own

admission, Jenner & Block "has represented video game companies and associations in previous

attempts to regulate video game expression" based on violent content, including cases before the

Seventh and Eighth Circuits, (*Interactive Digital Software Ass'n v St Louis County* and *American*

*Amusement Mach Ass'n v Kendrick*, Fallow Decl. ¶ 3), and numerous federal district court cases

including those recently presented in Illinois and California. (Motion at p 5, citing Fallow Decl.

¶¶ 3-5, 7-10, *Entertainment Software Association v Blagojevich* & *Video Software Dealers Ass'n*

*v Schwarzenegge*r; Fallow Decl ¶ 3, *Video Software Dealers Ass'n v Maleng*.)  The firm even

represented some of the defendant video game manufacturers in the Sixth Circuit *James v Meow*

*Media*[20] case. (Motion, p 5, citing Fallow Decl. ¶¶ 3, 8.)  Thus Plaintiffs' claim that Jenner &

Block "could perform their duties more efficiently than could counsel who was inexperienced in

---

[19] *Gratz,* 353 F Supp 2d at 943.

[20] *James v Meow Media, Inc*, 300 F3d 683 (6th Cir, 2002).

this area of law." (Motion, p 5.) Defendants assume more efficient means the job can be done in less time than it would take less-experienced attorneys to perform the same functions.

Given this extensive specialization and specific expertise, it is unbelievable that Jenner & Block alone utilized no less than six (6) experienced attorneys— two (2) of whom are partners intimately familiar with first Amendment law, new media cases, and video game cases in particular—for a combined total of 479.5 hours; and five (5) non-attorney staff, including two (2) paralegals, a librarian and two project assistants for a combined total of 41.25 hours. (Fallow decl. ¶¶7-13).

It is also incredible that despite Jenner & Block's experience, and Plaintiffs' claim that the firm "could handle the matter with greater efficiency and productivity than could have been accomplished by Detroit-based counsel" (Motion, p 9), Jenner & Block still needed a local firm to "contribute[ ] to the substantive aspects of the case, including the development of Plaintiffs' legal strategy." (Motion, p 7, citing Fallow Decl ¶¶ 2; Lavasseur Affidavit ¶¶ 3, 8.) Plaintiffs also seek compensation for Bodman's utilization of a senior associate with extensive litigation and First Amendment experience; a junior associate; and a mid-level associate— for a total of 139.5 hours. In short, given the fact that there was no discovery of any kind and no evidentiary hearing, this was not, as Plaintiffs assert, a "leanly-staffed" case. (Motion, p 5, citing Fallow Decl. ¶ 3.)[21]

Further, Plaintiffs' counsels' hours are excessive given the extensive similarity between Plaintiffs' pleadings and documents in this case and the Illinois case, also handled by Jenner & Block. Plaintiffs even admit that since the *Blagojevich* and *Schwarzenegger* litigations were largely contemporaneous with the litigation in this case, "much of Plaintiffs' legal arguments and

expert opinions had already been formed." (Fallow decl. ¶5.) A comparison of the Michigan

litigation to the *Blagojevich* litigation reveals that this is true.

Moreover, there is a significant overlap between many of the documents for which

Plaintiffs billed numerous hours and documents submitted in the Illinois case. (See Attachment

1, Illinois Complaint; Attachment 2, Illinois Memorandum in Support of Motion for Preliminary

Injunction; Attachment 3, Illinois declarations appended to Plaintiffs' Motion for Preliminary

Injunction) For example, over 60% of the numbered paragraphs in the Complaint filed in this

case are identical to the Complaint submitted in Illinois, and the two documents are almost

identical in terms of paragraph structure, headings, and organization of counts. (See, e.g.,

Michigan Complaint ¶¶s 1, 3, 6, 7, 8, 9, 10, 12, 13, 14, 15, 17, 18, 19, 29, 21, 22, 23, 24, 40, 41,

42, 45, 47, 48, 49, 54, 55, 56, 57, 59, 60, 61, 63, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76 (almost

identical); ¶¶s 4,16, 25, 58, 62 (similar)).

Similarly, over 60% of the paragraphs contained in Plaintiffs' Memorandum in Support of

Motion for Preliminary Injunction filed in this case are similar or almost identical to paragraphs

in the Illinois Memorandum in Support of Motion for Preliminary Injunction; the two documents

are similar in organization and headings; and 32 of the 41 cases cited are also cited in the Illinois

Memorandum. (See Michigan Memorandum, ¶¶ 1,2,5,6,7,11,19,23,24,30,35 (almost identical);

¶¶ 3,4,10,12,13,15,21,31,34,36,37 (similar); & Table of Authorities.) Further, of the nine (9)

declarations contained in the Appendix to the Memorandum in Support of Plaintiffs' Motion for

Preliminary Injunction filed in this case, five (5) are almost identical to the declarations

appended to the Illinois Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction

and have the same exhibits attached— Borasi, Carraway, Chan, Jimenez, and Waldman

---

[21] There is a discrepancy in the total sum that has been requested. Compare Plaintiffs' Brief, p 2 ("Plaintiffs seek a total sum of $218,190.64 in fees and costs.") with Motion, p 2 ("Plaintiffs seek

declarations—and three (3) have at least 40% of their numbered paragraphs similar or

identical—Andersen, Price, and Lowenstein declarations.  (See *Entertainment Software v*

*Granholm*, Declarations attached to Pls' Motion for Preliminary Injunction.)

Based on the excessive time spent drafting and preparing documents in this case, this Court

should reduce the hours requested by Jenner & Block and Bodman by an across-the-board

reduction of at least 25%.

## II.    THE RATES OF PLAINTIFFS' OUT-OF-TOWN LAW FIRM ARE EXCESSIVE IN COMPARISON TO LOCAL RATES FOR LAW FIRMS AND ATTORNEYS WITH FIRST AMENDMENT EXPERTISE.

To calculate the "reasonable hourly rate" component of the lodestar calculation, the

Supreme Court has instructed district courts to assess the "prevailing market rate in the relevant

community."[22]  "The burden is on the fee applicant to produce satisfactory evidence, in addition

to the attorney's own affidavits, that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparative skill, experience, and

reputation."[23]  By enacting 42 USC 1988, "Congress did not intend that lawyers, already a

relatively well off professional class, receive excess compensation or incentives beyond the

amount necessary to cause competent legal work to be performed in these fields."[24]  The statute

uses the words "reasonable" fees, not "liberal" fees.[25]  The reasonable fees allowed are "different

from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a

region."  Under 42 USC 1988, "a renowned lawyer who customarily receives $250 an hour in a

---

a total sum of $233,235.01 in fees and costs.")
[22] *Blum,* 465 US at 895.
[23] *Blum,* 465 US at 898.
[24] *Coulter,* 805 F2d at 148-49.
[25] *Coulter,* 805 F2d at 149.

field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate."[26]

**A.    Jenner & Block Attorneys' fees greatly exceed the market rate for Detroit.**

Two resources are helpful in determining the reasonable rate for the Jenner & Block attorneys:

(1) *Gratz v Bollinger,* in which this Court determined reasonable rates for similarly skilled and experience civil rights attorneys in 2005, and (2) the Affidavit of Dennis J. Levasseur which purports to provide customarily charged hourly rates for an experienced First Amendment attorney in Detroit, a mid-level associate in Detroit, and a junior level associate in Detroit.

Again, the *Gratz* case involved a challenge to the University of Michigan's admission policy.  In that case, this Court looked to the *Economic of Practice* survey issued by the State Bar of Michigan to determine the 2004 market rate applicable to the Detroit case.[27]  The Court used the average billing rate set forth in the survey, because "42 USC 1988 only guarantees Plaintiffs competent counsel, not the best and/or most expensive counsel."[28]  In *Gratz*, the Court allowed an attorney range of $188 to $290.

These rates appear to be consistent with those charged by the Bodman attorneys.  Based on Mr. Levasseur's affidavit, a competent and experienced First Amendment attorney in Detroit can charge $320 an hour in 2005 and $335 in 2006.  Given Paul M. Smith's experience and considerable skills, it is appropriate that Mr. Smith charge a comparable rate to what Mr. Levasseur—an equally skilled and experienced attorney—can charge, instead of the hourly rate of $585.00 that Smith has requested.  Jenner & Block staffed this case with a senior partner, a junior partner, a midlevel associate, and a junior associate.  (Fallow Decl ¶ 6.)

---

[26] *Coulter,* 805 F2d at 149.
[27] *Gratz,* 353 F Supp 2d at 948.

Ms. Fallow, a 1996 Harvard Law School graduate, described herself as a junior partner. (Fallow Decl ¶ 7.)  While Bodman did not utilize a junior partner, based on the rate charged by Bodman for a senior partner and the rates permitted in *Gratz*, it is appropriate for Ms. Fallow to bill at a rate of $270 an hour in 2005 and $295 an hour in 2006, instead of the hourly rate of $425.00 that she has requested.

Ms. Fallow described Amy L. Tenney, a 2000 New York Law School graduate, as midlevel associate throughout much of the work conducted in this case.  (Fallow Decl ¶ 9.) Based on the rate charged by Bodman for a midlevel associate, it is appropriate to bill at a rate of $165 for 2005 and $175 for 2006.  (See Levasseur Affidavit.)

Although Ms. Fallow does not give any specific information regarding Kathleen Hartnett, it appears that Ms. Hartnett billed only in 2005 and at the same rate as Ms. Tenney.  An appropriate rate for Ms. Hartnett, therefore, is $165 and not the hourly rate of $340.00 that she has requested.  Further, Matthew Hellman and Duane Pozza are both midlevel associates, meaning that their rate should be $165 in 2005 and $175 in 2006, instead of the $275.00 rate that they have requested.

Accordingly, this Court should reduce Jenner & Block's attorneys' fees to reflect a reasonable rate according to the prevailing market rate in Detroit.

**B.    Paralegal rates are excessive in comparison to their qualifications and comparable Detroit rates.**

While Bodman did not utilize a paralegal in this case, the *Gratz* Court did address a reasonable rate for a paralegal.  According to *Gratz*, an appropriate rate for a paralegal in Detroit is $100.[29]  The rate allowed in *Gratz* is lower than the rate Jenner & Block charged for any of their five (5) non-attorney staff who worked on this case.  In fact, the hourly billing rate

---

[28] *Gratz,* 353 F Supp 2d at 948.

Jenner & Block charged for three (3) of their non-attorney staff was higher than the rate charged

by Bodman for two (2) of the three (3) attorneys who worked on this case.  This Court should

reduce the hourly rate for Jenner & Block's non-attorney staff to $100.

### CONCLUSION

While Defendants do not dispute the lodestar approach, this court has discretion to adjust

the lodestar amount to exclude excessive, redundant or unnecessary billing.  Plaintiffs' requested

attorneys' fees are unreasonable because of considerable duplication of efforts, inadequate

billing, and because this case was straightforward, involved no discovery, no experts, no

evidentiary hearings and was substantially similar to other litigation involving Plaintiffs' counsel.

Defendants, therefore, ask that Jenner & Block's requested attorneys' fees be reduced by

at least 5% and Bodman's requested attorneys' fees be reduced by at least 10% for duplicative

services.  Also, both Jenner & Block's and Bodman's requested fees should be further reduced by

at least 10% due to vague and block billing.  Further, Jenner and Block's and Bodman's fees

should be cut by an additional 25% or more because of the procedural simplicity of this case and

the similarity of this case to the legal issues presented in the Illinois litigation.  Lastly, Jenner &

Block's fees for travel time should be reduced and Defendants should not be required to pay the

admission fees for this firm.

In addition to excessive hours, the rates requested by Plaintiffs' counsel do not comport

with those charged by competent attorneys within the jurisdiction of this Court, and are

---

[29] *Gratz,* 353 F Supp 2d at 949.

therefore, unreasonable. Based on the foregoing, Defendants respectfully request that this Court

exercise its considerable discretion and reduce Plaintiffs' requested attorneys' fees.

Respectfully submitted,

Michael A. Cox
Attorney General

*s/ Denise C. Barton*
P.O. Box 30736
Lansing, MI 48909
Primary E-Mail: Bartond@michigan.gov
(P41535)

Dated: May 1, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2006, I electronically filed the foregoing paper with the Clerk of
the Court using the ECF system which will send notification of such filing of the following:
Defendants' Response In Opposition To Plaintiffs' Motion For Attorney Fees.

*s/ Denise C. Barton (P41535)*
Dept of Attorney General
Public Employment, Elections & Tort Defense Div.
P.O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434
Email: bartond@michigan.gov

2005/entertainment/defs opp2mtn4fees