UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ENTERTAINMENT SOFTWARE ASSOCIATION, VIDEO SOFTWARE DEALERS ASSOCIATION, and MICHIGAN RETAILERS ASSOCIATION , <br><br>        Plaintiffs, <br><br> v <br><br> JENNIFER GRANHOLM, in her official capacity as Governor of the State of Michigan; MICHAEL A. COX, in his official capacity as Attorney General for the State of Michigan, et al, and KYM L. WORTHY, in her official capacity as Wayne County Prosecuting Attorney, <br><br>        Defendants. | No. 05-73634 <br><br> HON. GEORGE CARAM STEEH <br> MAGISTRATE JUDGE PEPE |
| Dennis J. Levasseur (P39778) <br> Alicia J. Blumenfeld (P67511) <br> Bodman LLP <br> 100 Renaissance Center <br> Detroit MI 48243 <br> (313) 393-7596 | Paul M. Smith <br> Katherine A. Fallow <br> Kathleen R. Hartnett <br> Amy L. Tenney <br> Jenner & Block LLP <br> 601 Thirteenth Street, NW, Ste 1200 <br> Washington DC 20005 <br> (202) 639-6000 |
| Denise C. Barton (P41535) <br> Jason R. Evans (P61567) <br> Ann Sherman (P67762) <br> Attorneys for Defendants <br> Michigan Department of Attorney General <br> Public Employment, Elections & Tort Div. <br> P.O. Box 30736 <br> Lansing MI 48909 <br> (517) 373-6434 | |

**<u>DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

Dockets.Justia.com

I.   **Although this Court has indicated that it was reasonable for Plaintiffs to hire Jenner & Block as an "out-of-town specialist," Plaintiffs have not established that it was necessary to hire Jenner & Block, and therefore, this Court should reduce Jenner & Block's rates because they are substantially higher than those necessary to attract competent counsel.**

This court has indicated that it was reasonable for Plaintiffs to hire an "out-of-town specialist." (*Entertainment Software v Granholm*, No. 05-73634 (ED MI, 2006) (Order). The issue, then, is what constitutes a reasonable fee for Jenner & Block, given the specific facts of this case.

   a.   **While Defendants do not concede that District of Columbia rates should be used, if this Court chooses to apply D.C. rates, the widely used Laffey matrix of D.C. rates reconciles Plaintiffs' use of an out-of-town specialist with Sixth Circuit case law mandating the use of a reasonable fee necessary to attract competent, but not the best or most expensive, counsel.**

Plaintiffs in their supplemental brief cite *Hadix v Johnson* for the proposition that reasonable attorney fees for an out-of-town specialist reflect the attorney's skill, experience, and reputation.[1] (Pls' supp br, p 2.) Plaintiffs fail to mention, however, that the court in *Hadix* went on to articulate a corollary of this rule: "[J]udges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate."[2] Consonant with this corollary in *Hadix*, this Court noted that plaintiffs who hire an out-of-town attorney are entitled to recover a reasonable fee that will attract competent counsel, but not the best or most expensive counsel. (*Entertainment Software v Granholm*, No. 05-73634 (ED MI, 2006) (Order).

---

[1] *Hadix v Johnson*, 65 F3d 532, 535 (CA 6, 1995) (vacating the district court's award of premium fees for an out-of-town expert and instead using local counsel's rates to accurately establish the prevailing market rate for complex institutional reform litigation).
[2] *Hadix*, 65 F3d at 535 (citing *Chrapliwy v Uniroyal, Inc*, 67 F2d 760, 769 (CA 6, 1987)).

Moreover, the court in *Hadix* noted that the plaintiffs had "failed to establish the need for an out-of-town expert."³ Similarly here, Plaintiffs, while they have established that it was reasonable to hire Jenner & Block based on its past familiarity with video game cases, have failed to establish that this hiring was necessary. Indeed, even given the relatively short time period necessary for a motion for injunctive relief, local Detroit attorneys with experience in First Amendment litigation could certainly have stepped in and familiarized themselves with prior video game cases—as did Defendants' attorneys in this case. Therefore, while it may have been reasonable to hire Jenner & Block, it was not necessary.

For this reason, Defendants previously argued—and still maintain—that Detroit area rates should be applied in this case. If this Court chooses, however, to apply D.C. rates rather than the local community rates urged by the Sixth Circuit in cases where out-of-town counsel is not necessary to the litigation yet has voluntarily accepted litigation in a foreign jurisdiction,⁴ application of the most reasonable and generally applied index of average D.C. rates (Laffey matrix) would best reconcile D.C. rates with binding Sixth Circuit case law precedent. (Defendants' Ex 1, Laffey Matrix). Application of the Laffey matrix would also satisfy this Court's strong feeling that a reasonable fee is one that will attract competent counsel, not the best or most expensive counsel. (*Entertainment Software v Granholm*, No. 05-73634 (ED MI, 2006) (Order).⁵

---

³ *Hadix*, 65 F3d at 536-37 (emphasis added).
⁴ See, e.g., *Coulter v Tennessee*, 805 F2d 146 (CA 6, 1986).
⁵ *Gratz v Bollinger,* 353 F Supp 2d 929, 948 (ED MI, 2005) (42 USC 1988 only guarantees plaintiffs competent counsel, not the best and/or most expensive counsel).

**b.      The hourly rate used to determine the lodestar is not the same as an attorney's customary rate, but rather, requires a determination of a court-ascertained reasonable rate necessary to attract competent counsel.**

The Sixth Circuit in *Adcock-Ladd v Secretary of Treasury* indicated that the lodestar is the hours reasonably expended multiplied by the <u>court-ascertained</u> reasonably hourly rate.[6] The court noted that the trial judge may, within limits, adjust the "lodestar" to reflect relevant considerations peculiar to the subject litigation.[7] The court also reiterated the general principle that where a party volitionally elects to represent a party in a case that will be litigated in a foreign jurisdiction rather than the lawyer's residence, local market rates should apply because that lawyer can reject the commission if he deems the customary local fee standards within the forum court's jurisdiction to be unattractive.[8] The *Adcock* court reversed the district court's application of reasonable hourly fees at the situs of the lawsuit and instead applied an out-of-town D.C. firm's rates as the prevailing market rate only because the plaintiff was required to depose a Washington bureaucrat in Washington, D.C.[9]

Here, in contrast to *Adcock*, there is no reason to allow Jenner & Block to recover more than the local community rates because Plaintiffs have not met their burden of establishing the need for an out-of-town specialist.[10] Moreover, Jenner & Block voluntarily accepted litigation in a jurisdiction where average attorney rates are considerably lower than their own customary rate. Jenner & Block's hourly rates should be adjusted accordingly. Nevertheless, should this

---

[6] *Adcock-Ladd v Sec'y of Treasury*, 227 F3d 343, 349 (CA 6, 2000) (citing *Hensley v Eckerhart*, 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983)).
[7] *Adcock-Ladd*, 227 F3d at 349 (citing *Reed v Rhodes*, 179 F3d 453, 471-72 (CA 6, 1999)).
[8] *Adcock-Ladd*, 227 F3d at 350 (citing *Hudson v Reno*, 130 F3d 1193, 1208 (CA 6, 1997), overruled on other grounds, *Pollard v E I du Pont de Nemours & Co*, 532 US 843; 121 S Ct 1946; 150 L Ed 2d 62 (2001)).
[9] *Adcock-Ladd*, 227 F3d at 350; cf *Hudson*, 130 F3d at 1208 (prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.)
[10] See *Covington v Dist of Columbia*, 57 F3d 1101, 1107 (DC Cir, 1995) (plaintiff bears burden of justifying reasonableness of its rates).

Court choose to apply D.C. rates, it should apply average D.C. rates and not the rate Jenner & Block commands in the D.C. market.

**II.     The Laffey matrix has been accepted and widely used by the D.C. Circuit and should be applied here if the court chooses to apply the prevailing rate in the District of Columbia area.**

The Laffey Matrix provides the most generally accepted—and credible—hourly rates for attorneys in the District of Columbia jurisdiction.[11]  The District of Columbia Circuit not only approves the use of the Laffey matrix "as the benchmark for 'reasonable fees,'"[12] but has held that an updated Laffey matrix alone constitutes sufficient evidence to demonstrate "the prevailing market rate in the relevant community for attorneys of reasonably comparable skill, reputation, and the complexity of the case they handled."[13]  In *Adolph Coors Co v Truck Insurance Exchange*—a case Plaintiffs cite to support the proposition that the Laffey matrix should not be applied in this case—the District Court for the District of Columbia pointed out that "use of the Laffey matrix is standard in this circuit to determine the prevailing community rate for complex federal litigation under fee-shifting statutes."[14]  "Courts in [the District of Columbia] Circuit have often relied on the Laffey matrix, or an updated version thereof, to determine appropriate fee awards based on market rates, even where the Laffey rates are not the

---

[11] See *Martini v Fannie Mae*, 977 F Supp 482, 484 (DDC 1997) (citing *Covington v District of Columbia*, 839 F Supp 894, 898 (DDC 1993), aff'd, 57 F3d at 1101; *Galloway v Superior Court*, __ F Supp 2d __, 1994 US Dist LEXIS 20730 (DDC 1994) (citing *Save Our Cumberland Mountains, Inc (SOCM) v Hodel*, 857 F2d 1516, 1525 (DC Cir, 1988) (commending the use of the Laffey matrix for the year to which it applies); *Adolph Coors Co v Truck Ins Exch*, 383 F Supp 2d 93, 98 (DC Cir, 2005) (Laffey matrix standard in D.C. Circuit).
[12] *McDowell v Gov't of the District of Columbia*, __ F Supp 2d __, 2006 US Dist LEXIS, at *4 (quoting *Muldrow v Re-Direct, Inc*, 397 F Supp 2d 1, 3 (DDC 2005) (D.C. Circuit approves Laffey matrix as the "benchmark for reasonable fees")).
[13] *Covington*, 57 F3d at 1109.
[14] *Adolph Coors*, 383 F Supp 2d at 98.

rates actually charged to the client."[15]  Numerous federal courts in the District of Columbia area have applied the Laffey Matrix.[16]

The United States Attorney's Office version of the Laffey matrix starts with the fee schedule established by Laffey in 1993 and then updates it by adding cost of living increase for the Washington, D.C. area to the previous' year's rate.[17]  These changes in the cost of living are measured by the Consumer Price Index for all consumers in the D.C. area.[18]  A second version of the matrix updates the Laffey fee schedule by adding the change in the cost of living based on the legal services component of the national Consumer price Index.[19]

Although federal courts in the D.C. Circuit have on occasion departed from the Laffey matrix or used other surveys of reasonable attorney rates in the D.C. area, the Laffey matrix is still most widely-used matrix in the D.C. Circuit, and certainly more widely used than the National Law Journal survey on which Plaintiffs rely.

Moreover, the Laffey matrix's application in this case is particularly appropriate where the hiring of Jenner & Block, even if expedient and an aggressive strategy, was not necessary given the number of competent First Amendment attorneys in the metro Detroit area.  Further, the appropriateness of the Laffey matrix's rates is supported by "The Survey of Law Firm Economics" attached as Plaintiffs' Exhibit 1 to Katherine Fallow's second declaration, which indicates that Jenner & Block's rates are higher the median rate charged by attorneys in D.C.

---

[15] *Muldrow*, 397 F Supp 2d at 3.
[16] See, e.g., *Muldrow*, 397 F Supp 2d at 4 (citing *Salazar v District of Columbia*, 123 F Supp 2d 8, 13 (DDC 2000) (courts in the D.C. circuit have often relied on the Laffey matrix, or an updated version thereof, to determine appropriate fee awards for complex federal litigation based on market rates)); *Trout v Ball*, 705 F Supp 705, 709 n 10 (DDC 1989) (Laffey matrix provides an accurate and updated schedule of attorney fees in the D.C. district); *Sexcius v District of Columbia*, 839 F Supp 919 (DDC 1993) (applying Laffey matrix); *Fischbach v District of Columbia*, 1993 US Dist LEXIS 19756, No. 87-0646 (D.D.C. Jan 4, 1993); SOCM, 857 F2d at 1525 (commending the use of the Laffey Matrix for the year to which it applies).
[17] *McDowell*, 2006 US Dist LEXIS 46371 at *4 n2.
[18] *McDowell*, 2006 US Dist LEXIS 46371 at *4 n 2 (quoting *Muldrow*, 397 F Supp 2d at 3).
[19] *McDowell,* 2006 US Dist LEXIS 46371 at *4 n 2 (quoting *Muldrow*, 397 F Supp 2d at 3).

Similarly, the Helder Associates 2005 Attorney Billing Rate Survey indicates that Jenner & Block's rates exceed the average for both partners and associates in large firms in the Eastern region (D.C. and New York) (Defendants' Ex 2, Helder Assoc 2005 Billing Survey, pp 17, 21.) That survey also shows that only a small percentage of partners and associates in the D.C. area have hourly rates comparable to those of Jenner & Block. (Defendants' Ex 3, Helder Assoc 2005 Billing Survey, pp 4, 9.) The Helder Associates 2004 Attorney Billing Rate Survey shows like results. (Defendants' Ex 4, Helder Assoc 2005 Billing Survey, pp 71, 72.)

**III.   Even if this Court awards Jenner & Block its claimed rates in this case, it should cut the hours charged to account for the alleged increase in efficiency that justifies the hiring of an out-of-town specialist when the metro Detroit area contains numerous attorneys qualified to litigate First Amendment issues.**

Defendants have argued both that Jenner & Block's hourly rates should be reduced and that its billed hours should be reduced due to block billing and duplication of efforts. (See Defendants' Resp in Opp to Attny Fees). If this Court exercises its discretion to award Plaintiffs' Jenner & Block's customarily billed rates, it most assuredly should exercise its discretion to cut Jenner & Block's hours to reflect the increased efficiency that Jenner & Block claims resulted from the Plaintiff's decision to retain counsel familiar with other video game cases. Jenner & Block's general familiarity with video game case law, its specific familiarity with the Illinois documents utilized by Defendants in this case, its drafting of similar Complaints and Motions for Preliminary Injunction in a number of other litigations, and the relatively uncomplicated nature of the instant litigation, should have resulted in the expenditure of far fewer hours than those billed.

Plaintiffs cannot have it both ways. On one hand, Plaintiffs assert that hiring Jenner & Block was required to efficiently prosecute this case, since they had already handled similar litigation in other venues, such as Illinois. Yet at the same time, Plaintiffs have failed to demonstrate these efficiencies and instead highlight the differences in the instant litigation to

7

justify compensation for an excessive amount of time Plaintiffs' counsel spent drafting pleading and documents that are substantially similar to the pleadings and documents submitted in the Illinois case.

## **CONCLUSION**

The hourly rates charged by Jenner & Block are unreasonable given their striking upward departure from the local community rate and the commonly applied Laffey Matrix, and the lack of necessity in Plaintiffs hiring an out-of-town specialist. Accordingly, for the reasons set forth above, and for the reasons stated in Defendants' Brief in Opposition to Attorney Fees, Defendants respectfully request that this Court reduce Jenner & Block's attorney fees to reflect those rates charged in the jurisdiction of this Court. If this Court decides to apply D.C. rates, Plaintiff's requested rates should be reduced based on the Laffey Matrix.

          Respectfully submitted,

          Michael A. Cox
          Attorney General


          *s/Ann M. Sherman*
          Attorney for Defendants
          Michigan Department of Attorney General
          Public Employment, Elections &
          Tort Defense Division
          P.O. Box 30736
          Lansing, MI 48909

Dated: August 2, 2006           (517) 373-6434
          Primary E-mail: shermana@michigan.gov
          (P67762)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the following: Defendants' Supplemental Brief in Support of their Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs.

*s/Ann M. Sherman*
Dept of Attorney General
Public Employment, Elections & Tort Defense Div.
P.O. Box 30736
Lansing, MI 48909-8236
(517) 373-6434
Email: shermana@michigan.gov
(P67762)